## GOOD *v.* MYLIN.

If issue be taken upon the charge of flooding the plaintiff's land, *by means of a dam erected across a stream of water*, the proof must be confined to the point—thus in issue; and evidence that the water was raised by obstructing two outlets, or lateral sluices, through a bank of the stream which was no part of the dam, is not admissible.

In such cases, the injury is a consequence which must be laid and proved to have been produced by a *specific cause*; to lay the flooding as a consequence without more, would be too general.

In an action for flooding the plaintiff's land, by means of a dam erected across a stream of water, a compensation to the plaintiff for his trouble and expense in conducting his suit, and establishing his right at law, is not recoverable.

IN error from the Court of Common Pleas of Lancaster county.

*May* 11. This was an action on the case, by Christian B. Mylin against Joseph Good. The declaration contained two counts. In the *first*, the cause of action was thus stated:—

"Joseph Good, late of said county, was summoned to answer Christian B. Mylin, of a plea of trespass on the case, &c. Whereupon the said Christian complains, for that whereas he the said Christian, on the 1st day of August, in the year of our Lord 1846, and from thence hitherto, was and still is, seised in his demesne as of fee, of and in a certain close of about forty acres of land, together with about twenty acres of meadow-land, and a certain grist-mill, saw-mill, dam, water-course, tail-race, and other appurtenances thereunto belonging, situate in Conestoga and Martic townships, in 'said county of Lancaster, which said land, meadow, mills, dam, water-course, tail-race, and appurtenances, were, during all the time aforesaid, in the possession of a certain Benjamin Hess, as tenant of the plaintiff; and whereas, the plaintiff and all whose estate he has in the said close, meadow, mills, water-course, and tail-race, and all others, his and their tenants and occupiers of the said premises, have always had and enjoyed, until the obstructions hereinafter mentioned, the free course and use of a certain ancient stream of water, called the Pequea creek, running and flowing to and along the same, to the said water-course, and thence along and over the said water-course to the said mills, and thence along and over the said tail-race, land, and meadow, to the said stream at its natural channel, and thence down the same in its ancient course; so that at the said mills and water-course, before the obstructions hereinafter mentioned, there

was a great fall of water, creating a water-power of great value, to be applied to the driving of water-wheels and propelling of mill-works and machinery; and the plaintiff and all others, his tenants and occupiers of the said premises, held, used, and applied the same to their great profit and advantage, and still ought to have and hold the same free and undisturbed, of all which the defendant had notice. Yet, the defendant, contriving and unjustly intending to injure the plaintiff, afterwards, to wit: on the day and year aforesaid, at the county aforesaid, wrongfully and injuriously raised, erected, and built, and caused to be raised, erected, and built a dam, composed and made of stone, logs, clay and gravel, of the height of five feet and a half, and of the length of sixty feet, in, over, and across the said stream of water, below the said land and mills of the plaintiff, to the great obstruction and impediment of the running and flowing of the said stream of water; and continued the same so raised, erected, and built, from that time to the day of issuing the original writ in this cause: by reason whereof, the waters of the said Pequea creek during all the time aforesaid were dammed, swelled up, and flooded back upon the said mills and tail-race of the plaintiff, and over his said land and meadow, and caused a back-water, hindering the free course of the said stream from the said mills, water-course, and tail-race, so that the fall of water at the said mills was reduced and the power thereof greatly diminished; and the water-wheels at the said mills during all the time aforesaid were clogged with so much water that they could not be turned round by the course of the water of the said stream, as they used to be: and the said mills could not be worked and run so constantly as theretofore, and could not do so much work as they were used to do, and the profits thereof were greatly lessened: so that the said tenant of the plaintiff was unable to pay the rents reserved to him, and the land of the plaintiff was overflowed and drowned by the said water, to the great damage and prejudice of reversionary interest and estate of the plaintiff."

In the *second*, the cause of action was stated to be an injury from backing the water, and flooding, as set forth in the *first count*, by raising the dam already erected, or erecting an additional dam, "*higher than the same was used or ought to be, in, over, and across the same stream of water.*"

To the cause of action as thus set out in the declaration, the defendant pleaded *not guilty;* and on these pleadings, issue was joined and the cause tried. On the trial, before LEWIS, P. J., a

mass of testimony was given, which it is not necessary to notice in this report.

Of the bills of exception to evidence, the following only is material :—

The plaintiff, in addition to the evidence given, offered to prove that for upwards of *twenty years*, previously to August, 1846, there were two outlets or sluices from the pool of the dam through the left bank into Eshleman's meadow, and thence into the natural channel of the stream below the dam, and over or through which the water constantly flowed; that the said outlets or sluices were never higher than the breast of the dam, and that the defendant raised them so that no water flowed through the same. To the admission of this testimony the defendant objected, because it was not the injury set forth in the declaration. But the court considered the outlets or sluices as part of the stream, and the erection therein as part of the dam described in the declaration, and admitted the evidence, and sealed a bill of exception.

The court instructed the jury that the slightest flooding of the land or mill of the plaintiff by the defendant without authority, entitled the plaintiff to nominal damages. That the jury might in addition give damages sufficient to compensate the plaintiff for the injury actually sustained, and for the trouble and expense of establishing his right:—Bearing in mind that the plaintiff, in claiming damages for the injury to the property, is confined to the injury done to his reversionary interest in the premises, and is not entitled to recover damages for the injury done to the term. For the latter injury the tenant alone (Abraham Hess) is entitled to compensation. It is certainly true, however, that any permanent injury to the freehold which puts a stop to the operations of the mill, and thus drives its customers from it, and impairs the market value of the reversion, is one for which compensation may be awarded in the present action.

To so much of the charge as related to the recovery of damages "for the trouble and expense of establishing the plaintiff's right," the defendant excepted.

The jury found a verdict for the plaintiff, and assessed the damages at $700, with six cents costs.

The defendant thereupon sued out this writ of error, and assigned the admission of the evidence embraced in his bill of exception, and his exception to the charge of the court, for error here.

*Stevens*, for plaintiff in error, cited Ang. on Water-Courses, 156;

10 Wend. 177; Jacoby *v.* Laussatt, 6 S. & R. 300; 1 Cow. 240; 14 Johns. R. 128; 7 Cow. 294; Hager *v.* McManus, 4 Watts, 118; 21 Wend. 144; Rogers *v.* Fales, 5 Barr, 154, 159.

*Frazer* and *Franklin,* contrà.—As to variance of proof from allegation in declaration: Outlets part of stream—island formed by them. Need not aver outlets in declaration: Durgin *v.* Leighton, 10 Mass. Rep. 56.

As to expenses: Wilt *v.* Vickers, 8 Watts, 227.

General principle in actions of tort: Nowell *v.* Roake, 7 Barn. & Cress. 404; Taylor *v.* Morgan, 3 Watts, 333; Romig *v.* Romig, 2 Rawle, 241; Hager *v.* McManus, 4 Watts, 118.

*May* 19.    GIBSON, C. J.—The cause of action set out in the first count of the declaration, is an injury from flooding by erecting a dam of a particular height and length across the stream of a creek; in the second, it is an injury from flooding by an additional dam erected, "higher than the same was used or ought to be, on and across the same stream of water." In cases of the sort, the injury is a consequence which must be shown to have been produced by a specific cause; for it is apparent, from the precedents, that it would be too general to lay the flooding as a consequence, without more; and if the plaintiff is bound to state the cause of it, he is bound to prove it as stated. The rule is, that the allegata and the probata must agree; and as the proof must be confined to the point in issue, it excludes all evidence of collateral facts which afford no reasonable inference as to the principal matter in dispute: 1 Greenl. Ev. s. 51, 52. 448. No allegation, it is said in 1 Stark. Ev. 433, which is descriptive of that which is legally essential to the charge or claim, can ever be rejected; because it would mislead the adverse party, and the court would not be sure that the facts had been found which were essential to support its judgment; and as the proof would be more general than the allegations, it would no longer agree with the cause of action laid. The issue, taken in this instance, was on a charge of flooding by means of a dam erected *across* the stream, of which alone the defendant had notice by the pleadings. The proof admitted was, that the water had been raised by obstructing two lateral sluices or gullies through the left bank, which was no part of the dam. These sluices had led the water out of the edge of the stream, round the dam, from a pool considerably above it, and returned it into the natural channel, below the defendant's mill. There was,

therefore, a decisive variance between the allegata and the pro-
bata, for which the evidence ought to have been rejected. The
closing of the sluices probably produced the mischief; for there
was evidence that the additional dam was lower than the other,
and would not have raised the water so high in the same circum-
stances.

A graver question arises on the instruction that the jury were
at liberty to compensate not only the injury laid, but the trouble
and expense of establishing its existence. I lament that the
general principle was recognised by this court, in Wilt *v.* Vickers,
8 Watts, 235, and Rogers *v.* Fales, 5 Barr, 159; for, to overrule
decisions so recent and direct, must cast a doubt on the stability
of judicial decision. Yet it is better to eradicate an erroneous
principle while it has scarce taken root, than to let it grow up into
a fixed rule of property. From a series of cases, the law has
become a system of principles; and to keep them in harmony with
each other, will conduce more to safety and certainty than would
an implicit obedience, in every case, to precedent. The injury, in
each of the cases alluded to, was inflicted under circumstances of
aggravation; and it is evident, from the opinion of the court,
delivered by our late brother Kennedy, in the first of them, that
the point was not thoroughly and deliberately considered. It was
an action for having forcibly set the plaintiff's young son on a
vicious horse, which threw him to the ground and broke his leg;
and that judge, premising that loss of service was the true founda-
tion of the action, said that if such a father should make out a
case, it would seem to follow as a corollary, that he should recover
whatever amount of damages might be necessary to compensate
him, and it might be that it could not be done without taking into
the estimate the trouble and expense incurred in the prosecution
of the suit; for that, if it were not, it might happen that the
value of the service lost would not be equal to the trouble and
expense; in which case the father, instead of being a gainer by
his remedy, would be a loser by it. It would have been safer to
put the case on the same ground as an action for the seduction of
a daughter, in which damages beyond the value of the service are
constantly given, to punish the offender. The ground actually
taken is untenable in a variety of aspects. The principle founded
on it would be without bound or limit, both in the generality of its
application and the extent of its operation. It would hold in
actions *ex contractu* as well as in actions *ex delicto;* and a defend-
ant sued on a plain bond, might find himself soused in damages,

not only for the detention of the debt, but for the amount of a surgeon's bill for curing the defendant's leg, broken in a fall from his horse, while travelling to court in order to prosecute the suit. Where would it stop? If every consequence, dehors the immediate injury, were to be taken into consideration, every loss, however remote, which would not have been incurred if there had been no suit, would have to be paid for. Special damages may be recovered in an action for a tort, when they are laid in the declaration; but the resulting injury must be a legal and a natural consequence of the tort, *and not remote;* such as the loss of a lieutenancy by imprisonment was held to be, in Boyce *v.* Bayliff, 1 Camp. 58. But it is a rule of pleading, in addition, that special damages must be so laid as to make it appear that no part of them had accrued after the inception of the suit; consistently with which, the damages claimed in this case could not be laid at all, for they accrued, day by day, in the progress of it. The second case I have referred to was ruled, I presume, on the authority of the first; for there is no other precedent for it in the English, and scarce one in the American, books from the Norman conquest to this day; and that the fact is so, is conclusive evidence that there is no such principle in the law. No lawsuit is prosecuted without trouble and expense; and were compensation for these recoverable, as an original ground of action by anticipation, the claim would be a standing dish, and we should have a direct precedent for it in every trial. Besides, it is a fallacy to suppose that every successful plaintiff has a right to be made whole by a verdict which is, at best, only an approximation to perfect justice. There is many a right which is not worth the trouble and expense of enforcing it; and the right supposed by our late brother, is exactly of that stamp. To pay for expenses and trouble, in order to make it valuable, would open a field of inquiry often more extensive than the issue raised by the pleadings, and make it the principal battle-ground. Such a principle of compensation is contrary to the genius of the common law, which does not give even costs, and the statute of Gloucester does not embrace it. Indeed, were such compensation allowed, it could only be as costs; for it would be infinitely more congruous and convenient to have it taxed by the prothonotary, on proof of particulars, than to have it assessed by the jury, without any proof at all. The only demand of it, to be found in the books previous to our own decisions, took that shape in Sebring *v.* Ward, 4 Wash. 546; in which a charge for travel and attendance was struck out of the bill of costs, avowedly

because it would not have been allowed by this court. In the case before us, there was no evidence of either; and how was the jury to estimate the loss from it? To guess at it as a lumping charge, would often do more injustice than to give nothing. On both points, then, it seems the decision below was wrong.

Judgment reversed, and *venire de novo* awarded.