The proceeding to remove W. Frank Marshall from the office of Receiver of Taxes of Philadelphia is before the court on his motion by his attorneys that Section 9 of Article IV of the Act of June 25, 1919, P. L. 581, under which the action was instituted, be adjudged unconstitutional and the proceedings thereunder be dismissed.
The reasons given in and for the motion are: 1. The Act is too vague, indefinite and uncertain to be operative *Page 329 
and enforced effectively because (a) no provision is made for the number of councilmen necessary to constitute the court of impeachment; (b) no provision is made for the number of councilmanic votes necessary for acquittal or conviction; (c) the grounds for impeachment are not sufficiently defined, particularly with respect to what constitutes "mismanagement" in office and no standards of any kind are given for determining the question of adequacy of management; (d) no definition is given of the respective powers and duties of the legislative and judicial branches of the government, both of which are to participate in the proceedings under the Act, and (e) no provision is made for the procedure which is to govern the trial. 2. The Act contains an improper delegation of the legislative power of impeachment, in that no standards have been set up for the certain determination of what constitutes mismanagement in office.
For a proper understanding of the questions presented for determination by the accused's motion, it is deemed essential to refer to the stages prescribed in Section 9 of Article IV of the Act of 1919, supra, through which the proceeding has progressed until it is now before the Council of the City of Philadelphia, as a court of impeachment, for trial, the steps taken by the accused in opposition thereto, and the effect of the decisions of the Supreme Court and the Court of Common Pleas.
Complaint in writing was made to the Court of Common Pleas No. 4 of Philadelphia by twenty-two qualified electors of the city, charging the accused with various offenses, setting forth the facts on which the charges were founded, supported by the oaths of five of the complainants according to the best of their knowledge, information, and belief, and, there appearing in the judgment of the court to be reasonable ground for such proceeding, the court directed the complaint to be filed of record, and granted a rule upon the accused to appear *Page 330 
and answer. This was in accordance with Section 9(b) of Article IV of the Act, 53 Pa.C.S.A. § 3002. Instead of answering the complaint, the accused filed preliminary objections thereto, which, rephrased and condensed, were as follows: (1) Court of Common Pleas No. 7, which was sitting as the so-called Summer Court at the time the complaint was filed, had no jurisdiction to hear the matter under the limitations placed upon the Summer Court by the Rule of the Common Pleas Courts of Philadelphia; (2) no Court of Common Pleas had jurisdiction over the proceeding, since Section 9 of Article IV of the Act of 1919, supra, pursuant to which it was instituted, was applicable only to municipal officers whereas the accused was a county officer; (3) the accused, being a county officer, came within the provisions of Section 4 of Article VI of the Constitution, and insofar as Section 9 of Article IV of the Act was sought to be made applicable to him, it was unconstitutional; (4) the tribunal ultimately sought to be constituted by these proceedings, that is, the Council of the City of Philadelphia, was disqualified from trying and judging the accused because composed of persons or groups of persons who were preferring the charges against him; (5) the accused has already been denied the possibility of a fair and impartial trial because of methods, comments and statements resorted to by complainants for the purpose of influencing members of City Council who will sit in judgment on him, and (6) the complaint did not specify the details of the conduct of which the accused was alleged to be guilty with the particularity necessary for him to be able to answer the charges against him. The court dismissed all the objections and directed the accused to file an answer. Upon appeal, this order was affirmed. Marshall Impeachment Case,360 Pa. 304.
It seems only just that all objections to the constitutionality of Section 9 of Article IV of the Act of 1919, *Page 331 
supra, should have been raised at one time, and the failure of the accused to include the reasons, which are given in support of his present motion, in his preliminary objections to the complaint should debar him at this late stage in the proceeding from the relief he now seeks. Adams v. Hubbard, 227 Pa. 304,305. Compare Pa. R. C. P. 1028(b), which provides: "All preliminary objections shall be raised at one time. They may be inconsistent. Two or more preliminary objections may be raised in one pleading." The preliminary objections filed by the accused were inconsistent, and they covered several different subjects. Two were with respect to the qualification of members of City Council to serve as members of the court of impeachment. Therefore, the accused did not limit his objections to any stage of the proceeding but included matters that might be raised at trial. Having questioned whether Section 9 of Article IV of the Act, which provides for the impeachment of municipal officers, applied to him as Receiver of Taxes of Philadelphia, there is no valid excuse for his failure to question also the meaning of "mismanagement", one of the grounds for impeachment of such officers specified in Section 9 (a), 53 P. S. § 3001. As hereinafter set forth, he subsequently filed an answer putting in issue his management of the office, and so it appears that it is too late in the proceeding for him to assert that this ground for impeachment is not sufficiently defined.
After the record was remitted by the Supreme Court, the common pleas again made the rule to appear and answer returnable on a day certain. The accused filed his answer, which contained in detail denials of some and qualified admissions of other of the charges. Upon consideration of the complaint and the answer, the court found sufficient cause for further proceedings, in that, the necessity for ascertaining facts put in issue by the answer to the complaint by means of evidence required the continuation of the proceeding, and appointed a *Page 332 
committee of five competent and reputable citizens to investigate the charges contained in the complaint, in accordance with Section 9(c) of Article IV of the Act, 53 Pa.C.S.A. § 3003, and to perform the other duties of such a committee, as specified in Sections 9(d) and 9(e), 53 Pa.C.S.A. § 3004 and 3005.Marshall Impeachment (No. 1), 66 Pa. D. C. 325. The accused did not appeal from this decision and order.
During the committee's investigation of the charges, and after considerable evidence had been received, including the testimony of complainants, the accused by his attorneys filed a petition for a rule upon complainants to show cause why the proceedings should not be quashed and the complaint dismissed, "in view of the fact that none of the persons who signed the Complaint took affidavit in support thereof had the kind of knowledge, information or belief required by law but based their action solely on remote hearsay and newspaper reports." Upon consideration of the testimony of complainants before the committee on which the petition was based, the language of Section 9 (b) of Article IV of the Act, 53 Pa.C.S.A. § 3002, which relates, inter alia, to the oaths or affirmations of the complainants in such a proceeding, the oaths to pleadings required by other statutes, and applicable principles of law, the rule was refused. Marshall Impeachment (No. 2), 66 Pa. D. C. 329. No appeal was taken from this decision of the common pleas.
Following the investigation that extended over five months, and included, inter alia, numerous open hearings (at which the testimony taken amounted to upwards of eighteen hundred typewritten pages and approximately seventy-five exhibits were received), the committee made its written report to the court of the facts found by it. The magnitude of the undertaking made it impossible for the committee to complete its task within three weeks after its appointment, and on its application *Page 333 
the time for filing its report, accompanied by the testimony taken, was necessarily extended by the court, as provided in Section 9(d) of Article IV of the Act, 53 Pa.C.S.A. § 3004.
The committee's report (consisting of one hundred and four typewritten pages) is an admirable exposition of the manner in which the accused managed the office of Receiver of Taxes, but, as it is not subject to the court's approval or disapproval, comments on its contents by the court are not considered to be necessary at this time. Certain of the charges made in the complaint were found by the committee to be well founded and others not to be so. The specifications of the charges against the accused contained therein are, succinctly, that, as Receiver of Taxes, he failed to collect the real estate taxes, the wage and income taxes, the amusement taxes, the parking lot taxes, and the water rents due to the City of Philadelphia, and to make proper efforts to collect the same; he improperly supervised the employees of his office; he failed to keep proper books and records; and he "mismanaged the office to which he was duly elected in that he failed to perform the duties of said office in that he failed to make proper effort to collect the proper amount of taxes due and owing to the City and County of Philadelphia."
The committee having found certain of the charges made in the complaint to be well founded, and in its written report to the court so stated in specific form, the court caused a certified copy of the whole record, with the specifications of the charges against the accused, to be transmitted to the Council of the City of Philadelphia, which was assembled within ten days thereafter, in special and open session, as a court of impeachment, and the members severally sworn to try and decide the charges against the accused according to the evidence; all of which was pursuant to and in compliance with the provisions of Section 9 (e) of Article IV of the Act, *Page 334 53 Pa.C.S.A. § 3005. Also, in accordance with this section, the committee appointed counsel to conduct the prosecution before City Council, and a copy of the specifications of the charges was served on the accused more than five days before Council was so assembled. As provided in Section 9(f) of Article IV of the Act, 53 Pa.C.S.A. § 3006, the President Judge of the Court of Common Pleas No. 4, in which the proceeding was instituted, presided after City Council was assembled in special and open session as a court of impeachment, and administered the oaths severally to the members of the Council and to the officers and employees of the court of impeachment. It is to be observed that the accused and his counsel, as well as counsel for the prosecution, were present at the opening session of the court of impeachment, and that, upon the application of counsel for the prosecution, in order to permit disposition of the legal questions raised by the accused's motion that Section 9 of Article IV of the Act be declared unconstitutional and the proceedings thereunder be dismissed, the court of impeachment was adjourned, to reconvene at the call of the presiding judge.
The accused's motion that Section 9 of Article IV of the Act of 1919, supra, be declared unconstitutional, and the proceedings thereunder be dismissed, was filed in the Court of Common Pleas No. 4 after the call for the assembling of City Council in special and open session as a court of impeachment was issued by its President, and before it so convened, but the time intervening was not sufficient to permit adequate consideration of the questions involved; indeed, counsel for the prosecution, immediately after service of a copy of the motion on him, made application, in which counsel for the accused joined, that opportunity be given to prepare briefs and for oral argument before the common pleas reached a decision. It might seem that as the court of impeachment has been convened, it is the tribunal to determine *Page 335 
whether the accused's motion should be granted or dismissed, but, if this be so, then the questions raised by the motion, being questions of law, are to be decided by the presiding judge, because, as prescribed in Section 9(f) of Article IV of the Act, the president judge of the court of common pleas in which the proceeding was instituted, or, in his absence, an associate judge thereof, shall decide finally all questions of law that may arise in the case. Therefore, in either aspect, ruling upon the motion is for the common pleas, and not for the members of City Council.
The method of removing the Receiver of Taxes of Philadelphia from office is provided for by statute, and this method was not abrogated by the Constitution of Pennsylvania of 1873. As the office is a creature of the Legislature, the latter has the right to fix the length of its term, to make it determinable on contingencies other than the mere passage of time, and to establish a method for the incumbent's removal. MarshallImpeachment Case, supra, 307-311. This authority necessarily involves and implies power to determine and specify the grounds for removal and the preciseness and exactness of the standards to be applied.
Section 9(a) of Article IV of the Act of 1919, supra, 53 P. S. § 3001, provides: "Municipal officers shall be liable to impeachment, suspension, and removal from office, for any corrupt act or practice, malfeasance, mismanagement, mental incapacity, or incompetency for the proper performance of official duties, extortion, receiving any gift or present from any contractor or from any person seeking or engaged in any work for, or furnishing material to, the city, or from any incumbent or occupant of, or candidate or applicant for, any municipal office, and for wilfully concealing any fraud committed against the city." The contention that this section is unconstitutional is based upon the word "mismanagement", in that what constitutes mismanagement *Page 336 
in office is not sufficiently defined and no standards are given for determining the adequacy of management (paragraph 1 (c) of the accused's motion), and there is an improper delegation of the legislative power of impeachment because no standards have been set up for the certain determination of what constitutes mismanagement in office (paragraph 2 of the motion).
The meaning of the word "mismanagement" is clear. It is "wrong, bad, or bungling management; maladministration". Webster's New International Dictionary, 1931 Edition, page 1381. Besides, "mismanagement" or "mismanaging" has a long established meaning in the law, appearing in various statutes, such as the Acts of March 29, 1832, P. L. 190, section 22; April 22, 1846, P. L. 483, section 1; April 7, 1859, P. L. 406, section 1; May 1, 1861, P. L. 680, section 1; June 7, 1917, P. L. 447, sections 53 and 55, relating to fiduciaries, as well as in the Act of June 1, 1885, P. L. 37, which supplied the Charter for the City of Philadelphia before the Act of 1919, supra, the language of Article XIII of the earlier Act being almost the same as that of Section 9 of Article IV of the later Act. Of course, a public office is a public trust: Constitution of Pennsylvania, Article VI, Section 3; Taylor and Marshall v.Beckham (No. 1), 178 U.S. 548, 577; Commonwealth v. Gamble,62 Pa. 343, 349; Commonwealth v. Kirk, 141 Pa. Super. 123,145-146; and the occupant of such an office is a fiduciary. Like any other fiduciary or trustee, he is required to exercise common skill and prudence, and when his conduct of the trust is not marked by these qualities, there is mismanagement. CompareBarnes's Estate, 339 Pa. 88, 94. Also, the improper keeping of accounts constitutes mismanagement. Bell's Estate (No. 2),44 Pa. Super. 62, 63-64. There was thus no need for the Legislature to supply a definition for a word of such understandability. *Page 337 
The Receiver of Taxes of Philadelphia, "is the heart of the [municipal] body. He collects the money which is the lifeblood of the organism and passes it on to be circulated throughout the entire body without which it could not function. He collects not only city taxes, but also school taxes, county taxes, water rents and other moneys payable to the governmental subdivisions within the territorial limits of the city and county." Stewart v. Hadley, 327 Pa. 66, 73; MarshallImpeachment (No. 1), supra, 326. Failure to perform the duties of the office, to collect, and to make proper efforts to collect, taxes and water rents due to the City of Philadelphia, to keep proper books and records, and to supervise properly the employees of the office (the specifications of the charges against the accused) would certainly be mismanagement of this office of public trust, if not constituting "incompetency for the proper performance of official duties". The Legislature exercised its power properly and did not delegate it by the word "mismanagement" in Section 9 (a) of Article IV of the Act of 1919, supra, for it provides an adequate standard by which the conduct of an incumbent of the office may be judged.
Legislative power is the power "to make, alter and repeal laws." O'Neil v. American Fire Ins. Co., 166 Pa. 72, 76. While the Legislature cannot delegate its lawmaking power, it can "delegate a power to determine some fact or state of things upon which the law makes, or intends to make, its own action depend." Locke's Appeal, 72 Pa. 491, 498. It may delegate "the duty to determine whether the facts exist to which the law is itself restricted." Holgate Bros. Co. v. Bashore, 331 Pa. 255,260. But it cannot empower a fact-finding body "to create the conditions which constitute the fact." Wilson v. PhiladelphiaSchool District, 328 Pa. 225, 237. Under Section 9 of Article IV of the Act of 1919, supra, the members of the Council of the City of Philadelphia are *Page 338 
to determine from the evidence whether a municipal officer is guilty of the charges preferred against him. They do not provide by ordinance for his removal, nor do they create the conditions or grounds for removal. They vote, but they declare no consequences. It is the Act which provides the grounds for removal and that the office shall be declared vacant if he is found guilty of the charges. The result provided by law is contingent upon the determination of the facts. Accordingly, there is no improper delegation of legislative power.
"It is safe to assume . . . that the type of delegation of power by a legislative body which is invalid under the one Constitution is also invalid under the other, and that reliance may be placed upon . . . decisions arising under the Constitution of the United States in construing the Constitution of Pennsylvania." Holgate Bros. Co. v. Bashore, supra, 259-260. "The Constitution as a continuously operative charter of government does not demand the impossible or the impracticable. . . . The essentials of the legislative function are the determination of the legislative policy and its formulation and promulgation as a defined and binding rule of conduct. . . . These essentials are preserved when Congress [or the Legislature] has specified the basic conditions of fact upon whose existence or occurrence, ascertained from relevant data by a designated administrative agency, it directs that its statutory command shall be effective. It is no objection that the determination of facts and the inference to be drawn from them in the light of the statutory standards and declarations of policy call for the exercise of judgment . . .". Yakus v.United States, 321 U.S. 414, 424 (Emphasis added). See alsoMcKinley v. United States, 249 U.S. 397, 398-399; United Statesv. Grimaud, 220 U.S. 506, 515-517; American Baseball Club ofPhiladelphia v. Philadelphia, 312 Pa. 311, 317-319. The entire statute must be viewed to see if there is a reasonably clear standard to govern *Page 339 
the delegated discretion. See dissenting opinion of Justice CARDOZO in Panama Refining Co. v. Ryan, 293 U.S. 388, at pages 435 and 439. The title of the Act of 1919, supra, "For the better government of cities of the first class of this Commonwealth", is a declaration of the legislative purpose and objective. Section 9 of Article IV prescribes the method of achieving the legislative intent. One of the standards is that there shall be no mismanagement. From the scope of the Act, the various offices and myriad duties of the officers involved, it is clear that no better or more definite standard could have been fixed. There is no arbitrary grant of power bestowed on the members of City Council. They must proceed according to the law. They must try and decide the charges against the accused according to the evidence. This is their duty and sworn obligation as members of the Council and as members of this court of impeachment.
"It is a cardinal principle of our system of government, that local affairs shall be managed by local authorities . . ., and hence, while the rule is also fundamental that the power to make laws cannot be delegated, the creation of municipalities exercising local self-government has never been held to trench upon that rule. Such legislation is not regarded as a transfer of general legislative power, but rather as the grant of the authority to prescribe local regulations, according to immemorial practice, subject of course to the interposition of the superior in cases of necessity." Stoutenburgh v. Hennick,129 U.S. 141, 147. That wide discretionary power of local self government may be vested in municipalities is recognized as an exception to the general rule. As Justice SHARSWOOD said inDurach's Appeal, 62 Pa. 491, at page 493: "Municipalities . . . are invested with subordinate legislative powers for local purposes connected with the public good . . .". "These local units of government possess a legislative body chosen by the people, and delegation of power to them does not actually *Page 340 
remove this important subject from the control of the people."Wilson v. Philadelphia School District, supra, 230.
The contention that Sections 9(e), (f) and (g) of Article IV of the Act of 1919, supra, are too vague, indefinite and uncertain to be operative and enforced effectively (paragraph 1 of the accused's motion) is based upon the assertions that no provision is made for the number of councilmen necessary to constitute the court of impeachment (paragraph 1(a) of the motion), that no provision is made for the number of councilmanic votes necessary for acquittal or conviction (paragraph 1(b) of the motion), that no definition is given of the respective powers and duties of the legislative and judicial branches of the government, both of which participate in the trial (paragraph 1(d) of the motion), and that no provision is made for the procedure which is to govern the trial (paragraph 1(e) of the motion. But the sections are not so incomplete in their provisions that they cannot be executed, nor " 'so vague, indefinite and uncertain that the courts are unable to determine, with . . . reasonable degree of certainty, what the legislature intended' ". Miller v. Belmont Packing Rubber Co., 268 Pa. 51, 63. The respective powers and duties of the legislative and judicial branches of the government, both of which participate in the trial, are clearly stated. The members of City Council try and decide the charges against the accused according to the evidence, voting on whether he is guilty or not guilty, whereas the presiding judge decides finally all questions of law and evidence that arise in the case.
Section 9(e), 53 Pa.C.S.A. § 3005, provides, inter alia, that the Council of the City of Philadelphia "shall be assembled . . ., in special and open session, as a court of impeachment, and the members shall be severally sworn to try and decide the same [i.e. the charges] according to the evidence." Obviously this means all the *Page 341 
members of City Council in office and engaged in the performance of their councilmanic duties. These duties include not only legislative functions but also serving as members of a court of impeachment. When City Council assembled as a court of impeachment in this proceeding, there were two vacancies in its membership, and in the event these vacancies are subsequently filled, the new members, after they have duly qualified and taken their seats as members of the Council, are eligible to serve as members of this court of impeachment. Elected under the Act of 1919, supra, of which Section 9 of Article IV is a part, all councilmen are under obligation to comply with all its provisions.
The members of City Council are designated by law as the members of a court of impeachment. They are not like jurors who may be replaced when disqualified, but they are members of such a court by virtue of their office. It appears that there is no valid ground, except sickness, for their disqualification from this service. For example, prejudice against or friendliness to the accused should not excuse them. The Legislature knew that they might be called upon to sit in judgment of a man who was intimately engaged with them in conducting the City's business, for, in the very same statute, it gave them control over the amount and character of the annual expenditures to be made by municipal officers. Sections 2 and 4 of Article XVII of the Act of 1919, supra, 53 P. S. § 3272 and 3274. It has been decided that participation in making and preferring charges does not excuse, relieve or disqualify from serving on a court of impeachment. 556 Law Trials 17-45; 519 Law Trials 21-28; 25 Law Trials 53-54. Compare Tibbs v. Atlanta, 125 Ga. 18, 20-22;State ex rel. v. Wells, 210 Mo. 601, 614-618; Barrett v. Boardof Commissioners of Atlantic City, 85 N.J.L. 134, 138, affirmed in 86 N.J.L. 675 (without opinion). It has been determined that personal interest is not a ground for disqualification. *Page 342 
In the impeachment trial of President Andrew Johnson, the competency of the president pro tempore of the United States Senate was challenged on the ground that under the Constitution and then existing law, there being no Vice-President at the time, he would become President if the charges were sustained and hence was necessarily personally interested. After prolonged and able argument the challenge was withdrawn, and he subsequently voted for conviction. 117 Law Trials 11-12 (the challenge), 119 Law Trials 360-401 (the argument), and 118 Law Trials 486 (the vote). In the impeachment trial of William Sulzer, Governor of the State of New York, when the president pro tempore of the senate was challenged on the ground that he would succeed to the office of Lieutenant Governor, the challenge was denied. 556 Law Trials, supra. The challenge has not been sustained in England. 5 Comyns, Digest of the Laws of England, 308.
The oath taken by members of City Council as members of a court of impeachment "to try and decide" the charges against the accused, "according to the evidence", requires each member to be present during the sessions of the court in order to see and hear the witnesses. Not only what witnesses say but their manner and demeanor while testifying are important factors in passing on their credibility. The determination of whether or not a witness is worthy of belief depends upon the impression he makes when answering questions put to him on direct and cross-examination. It is possible, if not probable, that there will be conflicts or contradictions in the testimony, and the acceptance of the testimony of one witness and the rejection of the testimony of another witness necessitate that most careful attention be given each witness from the moment he is sworn or affirmed until his testimony is concluded. No evidence has been presented as yet to the court of impeachment in this proceeding. If its introduction commences before a new *Page 343 
member of the Council becomes a member of the court, or a member of the Council serving as a member of the court becomes sick and is absent from any of its sessions, he will be disqualified from voting on any of the charges that is supported by evidence introduced when he was not present.
Although Section 9 of Article IV of the Act of 1919, supra, contains no provision for the number of councilmanic votes necessary for conviction in an impeachment trial, the number necessary in other matters is specified in the Act. Section 6 of Article XVI, 53 P. S. § 3256, provides: "No bill shall become an ordinance unless a majority of all the councilmen elected be recorded as voting in its favor." This section also provides for "a vote of three-fifths of all the members elected" to the Council to override the mayor's disapproval of an ordinance or resolution, but, of course, this has no relevancy, because the mayor's approval of the action or decision of City Council in a proceeding such as this is not required. Likewise, Section 10 of Article XVII, 53 P. S. § 3280, which authorizes payment for material furnished or services rendered without a previous appropriation, "if the same is agreed to by a two-thirds vote of all the members elected" to the Council and approved by the mayor, and Section 1 of Article XVIII, 53 P. S. § 3301, which requires "the affirmative votes of two-thirds of all of the members of the council for the passage of any ordinance authorizing new debt to be incurred or an increase of indebtedness" by the city, have no bearing upon the present situation, for they relate to financial matters. However, Section 2(b) of Article II, 53 Pa.C.S.A. § 2922, is apposite. This provides: "If two or more candidates [for mayor] be equal and highest in votes [cast at a municipal election], one of them shall be chosen mayor by a vote of the majority of all the members of the incoming council, immediately upon its organization." It is accordingly apparent from the provisions of *Page 344 
the Act that the affirmative vote of a majority of all the councilmen elected to City Council is necessary in order that the accused "be found guilty on any of the specifications", as prescribed in Section 9 (g) of Article IV of the Act, 53 Pa.C.S.A. § 3007.
The principle of unanimity, which characterizes trial by jury, does not prevail in impeachment trials. At common law, a majority vote for conviction was sufficient. Case of EarlFerrers, 168 English Reports Reprint 69, 71; 5 Comyns, Digest of the Laws of England, 307-308, and 314; 1 Holdsworth, "A History of English Law", 379; Riddell, Impeachment in England and English Colonies, 7 N.Y. U. Law Quarterly Review 702, 706. Unless otherwise specified in a constitution providing for the proceeding, a majority is all that is necessary for conviction at the present time. Cushing's Law Practice of Legislative Assemblies, 2d Ed., § 2558, page 986. Although both the Constitution of the United States, Article I, Section 3, and the Constitution of Pennsylvania, 1873, Article VI, Section 2, as well as the Constitution of many other States, provide that no person shall be convicted in an impeachment trial without the concurrence of two-thirds of the members of the senatepresent, the constitutional method of removal is not applicable in this case. Marshall Impeachment Case, supra, 307-311. Hence, a two-thirds vote is not required.
It may be questioned whether a majority vote of all the councilmen elected to City Council or majority vote of the members present, there being, of course, a quorum, is necessary in order to find the accused guilty of any of the charges. Authority for the former is found in the Act of 1919, supra, and for the latter in the common law. As the method of removal of the Receiver of Taxes of Philadelphia from office is statutory, it appears that the statute is controlling, that is, that a majority vote is required. *Page 345 
Rule 4 of the Rules of Council, Manual of the City Council of Philadelphia for 1949, page 14, provides: "A quorum shall consist of a majority of the members elected to Council." This number is twelve, and it governs even when vacancies exist in the Council's membership of twenty-two. It also constitutes a majority of such membership. Therefore, it seems that twelve councilmen must concur in finding the accused guilty before the "court of common pleas shall enter judgment accordingly, and declare the said office vacant", as provided in Section 9 (g) of Article IV of the Act.
Section 9 (f) of Article IV of the Act of 1919, supra,53 Pa.C.S.A. § 3006, provides that the president judge of the court of common pleas, in which the complaint was filed, or, in his absence, an associate judge thereof, shall preside during the trial, and "decide finally all questions of law and evidence that may arise in the case. He shall have the power to issue subpœnas for witnesses, and compel their attendance by attachment and the production of books, papers, and documentary evidence required or called for by the said court of impeachment, and to punish witnesses and others for contempt, as fully as any court of this Commonwealth may lawfully do in any case." It is thus apparent that the Legislature intended that the trial should be conducted in the manner in which trials in the common pleas are conducted. Subpœnas will be issued in the name of the presiding judge, and if not obeyed, upon proof of service thereof, attachments will be issued by him. Not only witnesses but all persons participating in the trial of the case, or anyone interfering or attempting to interfere in any way with its orderly and proper conduct, will be subject to punishment by the presiding judge for contempt as fully as in any court of this Commonwealth. Rulings on evidence will be in accordance with the law of evidence as applied in the common pleas, except that greater latitude is allowable in a removal proceeding. *Page 346 
Compare Bradycamp v. T. W. Metzger et al., 310 Pa. 320,321-322. Of course, the accused is "entitled to be heard . . . in person or by counsel and to produce evidence in his defense," as provided in Section 9 (e) of Article IV of the Act. While only a few of the Rules of City Council are applicable to and in this proceeding, they have been and will be followed. As it has convened as a court of impeachment, the efficacy of subsequent changes in its rules as they pertain to the trial of this case is for the presiding judge to determine.
The power given the presiding judge to decide "finally" all questions of law and evidence that arise in the case means that his rulings are not subject to action thereon by the members of City Council. Ordinarily at a meeting an appeal can be taken from a ruling of the presiding officer to the body which makes the final decision, but in the "special and open" sessions of the Council "as a court of impeachment" this is prevented by the precise direction that the rulings or decisions of the presiding judge shall be final.
The word "finally" may be considered as also meaning that the rulings of the presiding judge are not subject to review by the Supreme Court. Generally no appeal can be taken from the decision of a legislative body in an impeachment trial to a court, but, in view of the fact that in this proceeding judgment is entered by the court of common pleas upon the decision or finding of the court of impeachment, an appeal may lie to the Supreme Court, but only for review of the propriety of the rulings of the presiding judge, although this is not free from doubt.
As the members of City Council are ipso facto members of the court of impeachment and not jurors, the assumption is that the presiding judge is not required to "charge" as in a jury trial. The guilt of the accused is to be decided by the members of the Council "according to the evidence", whereas the presiding judge does *Page 347 
not have a vote on that question, nor the right to enter judgment notwithstanding the verdict as in a civil action at law, and so he does not pass upon the weight of the evidence but only on its admissibility. When he admits evidence, his obligation with respect thereto ends, except as it concerns questions of law that arise. Assuming, however, that a statement or "charge" should be made after the addresses or arguments of counsel and before the members of City Council vote on the specifications of the charges against the accused, it seems that it should be limited to matters of law and not include references to the evidence except as the latter is incident to the former.
It is accordingly apparent that, although Section 9 of Article IV of the Act of 1919, supra, does not prescribe in detail the procedure which is to govern the trial, it is not "impossible of execution," and such "imperfection . . . does not make it unconstitutional." Commonwealth v. Moir, 199 Pa. 534,544. The rule is that "if the situation which arises in a given case is not within the strict letter of the act, but is within its spirit and intention, the court should so direct the procedure that the legislative purpose may be enforced, so far as this can properly be done." Shapiro v. Philadelphia, 306 Pa. 216,220. "The act is a remedial one. Its purpose is to [provide a method for the removal of municipal officers from office upon violation of its provisions 'For the better government of cities of the first class']. Hence, the statute is to be liberally construed to advance the legislative purpose . . .". Vinnacombe v. Philadelphia, 297 Pa. 564, 569. "In all civil litigation, the trial courts, at least to the extent that they are not inhibited by statute, have the power to control the procedure so as to attain 'justice without sale, denial or delay.' " First Nat. Bank of Pittsburgh v. Baird, 300 Pa. 92,101. "An act will not be declared inoperative and ineffectual on the ground that it furnishes no adequate means to secure *Page 348 
the purpose for which it is passed, if common sense and reason can devise and provide the means, and all the instrumentalities necessary for its execution are within the reach of those intrusted therewith . . .". Miller v. Belmont Packing RubberCo., supra 63. The means necessary to effectuate the provisions of the Act of 1919, supra, have been hereinbefore outlined.
The principle is "ingrained in American jurisprudence that a proper respect for the legislative and executive departments of the government requires that every reasonable presumption be made in favor of the validity of a statute, and that, before an act may be declared unconstitutional or otherwise invalid, it must clearly appear that it cannot be supported by any reasonable intendment." Willcox v. Penn Mutual Life Ins. Co.,357 Pa. 581, 583. The courts "have no power to set aside any part of a statute, be it a practice act or one dealing purely with substantive law, unless the conclusion that it is either unworkable or unconstitutional is inevitable . . . and the necessity for so declaring inescapable . . .". Miller v.Belmont Packing Rubber Co., supra, 62. Section 9 of Article IV of the Act of 1919, supra, conveys the legislative purpose in a manner that is workable, and reasonable construction will support and give it effect
"It is axiomatic that he who asks to have a law declared unconstitutional takes upon himself the burden of proving beyond all doubt that it is so." Hadley's Case, 336 Pa. 100,104. The accused has not sustained this burden.
For the foregoing reasons, all of the provisions of Section 9 of Article IV of the Act of June 25, 1919, P. L. 581, are adjudged and declared to be constitutional, and the proceedings brought thereunder are not dismissed but directed to be carried on expeditiously to conclusion.
Motion dismissed.
Receiver of Taxes appealed. *Page 349 
The judgment of the court below is affirmed on the opinion of FRANCIS SHUNK BROWN, JR., P. J.