# Halifax Area Joint School System v. Chaundy

*Henry E. Harner*, for plaintiff.

*William W. Lipsitt*, for defendant.

MILLER, J., November 5, 1962.—Plaintiff school districts, comprising the Halifax Area Joint School System, have instituted this action in trespass against the former secretary of the joint school system, seeking to recover compensation for damages which they allegedly sustained by defendant's embezzlement and unlawful appropriation of certain school funds. The damages here sought to be recovered are the cost of the services of a firm of certified public accountants which was retained by plaintiffs in order to determine the extent of defendant's embezzlement . . .

I. *Are Plaintiffs Accounting Expenses a Proper Element of Damage?*

It is well established that the action of trespass is the proper remedy to recover damages occasioned by fraud and deceit: Korona v. Bensalem Township, 385 Pa. 283, 286 (1956) ; West Homestead Borough v. Erbeck, 230 Pa. 316 (1911). Certain sections of the Restatement, Torts, are also applicable. Section 874 states:

"A person standing in a fiduciary relation with another is liable to the other for harm resulting from a breach of duty imposed by such relation." Section 525 states: "One who fraudulently makes a misrepresen- tation of fact, opinion, intention or law for the purpose of inducing another to act or refrain from acting in reliance thereon in a business transaction is liable to the other for the harm caused to him by his justifiable reliance upon the misrepresentation."

On the question of damages, section 910 of the Re- statement, Torts, states: "A person injured by the tort of another is entitled to recover damages from him for all harm, past, present and prospective, legally caused by the tort."

Finally, section 906 of the same Restatement states:

"Compensatory damages for harm involving pecu- niary loss include compensation for . . . (c) the crea- tion of liabilities." Pennsylvania cases on the exact issue here involved are not plentiful, but the friendli- ness of the Pennsylvania courts to the Restatement of Torts is a matter of record: Seaboard Surety Company v. Permacrete Construction Corp., 221 F. 2d 366, 372 (C. C. A., 3d; Goodrich, C. J., 1955); Florey, the Re- statement of Torts in Pennsylvania 1939-49, 22 Pa. B.A.Q. 79 (1950).

We also note that the foregoing propositions found- ed in the Restatement have been generally approved by the Pennsylvania courts. In Neuman v. Corn Exchange National Bank and Trust Company, 356 Pa. 442, 455 (1947), we find that plaintiff in an action for deceit can recover his actual loss; in Crawford v. Pituch, 368 Pa. 489, 495 (1951), the court stated:

"The damages recoverable are only such as can be said to have been the immediate and proximate conse- quences of the deceit practiced upon the plaintiffs."

In Savitz v. Weinstein, 395 Pa. 173 (1959), the court upheld a complaint in trespass alleging a cause of

action for fraud and deceit, and cited with approval section 525 of the Restatement, Torts, supra, which although not directly apposite, bears some relation to the facts of this case. There, where plaintiff alleged that defendant attorney by his fraud and deceit had caused financial detriment to plaintiff, the Supreme Court, in dismissing a demurrer, reiterated that plaintiff could recover only his actual loss, but it also stated, by way of dicta, that the damages recoverable in that particular case would be plaintiff's actual cost and expenses, and the reasonable value of the services of his attorney in recovering from the third party the sum which it was alleged plaintiff had lost by virtues of defendant's fraud and deceit: ibid., at page 178.

Here, plaintiffs allege that they incurred expenses for the services of a firm of certified public accountants in order to determine the extent of defendant's embezzlement and unlawful appropriation to her own use of plaintiff's funds. They claim that the liability for the accountants' services was necessitated by defendant's tort, and that, in effect, it was a natural and probable consequence flowing from the tort. We are permitted to draw all reasonable inferences from the alleged facts in passing upon this demurrer, and we, therefore, think it reasonable to infer that defendant, as secretary of the joint school system, concealed her peculations from the school directors and auditors and that, as with most cases involving embezzlement of funds by an employe, it was necessary for a detailed accounting of the school fiscal records to be made by trained personnel in order that the misappropriations of defendant, to which she later pleaded guilty, could be discovered and delineated.

To this argument, however, defendant replies that the accounting expenses were actually a cost of litigation, something akin to attorneys' fees or expert witness fees incurred in preparation for the conduct of

litigation. If these accounting charges were a direct expense of litigation, it is well established that plaintiffs would be denied recovery against the defendant: 11 Pa. Law Encyclopedia, Damages, §20; Good v. Mylin, 8 Pa. 51 (1848); Winton's Appeal, 87 Pa. 77 (1878); 15 Am. Jur., Damages, §142. In addition to the foregoing authorities, defendant relies principally upon Schultz v. Mountain Telephone Company, 364 Pa. 266 (1950); Smith v. Equitable Trust Co., supra; Blossom Products Co. v. National Underwear Co., 29 D. & C. 581 (1937); Rumsey Mfg. Corp. v. United States Hoffman Machinery Corp., 187 F. 2d 927 (1951); and Hackett and Hackett v. Hackett, 104 Pa. Superior Ct. 353 (1932). We find no fault with the general proposition thus advanced in these cases cited by defendant, but we do not find them here controlling.

In the Schultz case, dissenting shareholders of a public utility company opposed the sale of its assets to another telephone company. Appraisers were appointed to determine damage, if any, which these shareholders suffered, but which issue was determined adversely to them. In reversing the lower court's imposition of appraisers' fees and the shareholders' counsel fees upon the utility company, the Supreme Court held that such expenses incident to the litigation could not be charged to the utility company because there was no statutory provision therefor. In the Smith case, it was held that counsel fees incurred by a creditor to establish priority of its right to a lien as against other creditors would not be allowed as costs to the successful creditor. In the Blossom Products case, it was held that premiums paid by a plaintiff for a replevin bond are not taxable against the losing party as part of the costs. Rumsey held that in an action by a subcontractor against a prime contractor for damages upon cancellation of subcontract for war materials, all items of post cancellation expenses incurred by subcontractors in prepar-

ing for trial were not proper items of damage. Finally, Hackett held that complainants in an equitable proceeding in whose favor a decree was entered, directing the reformation of a deed of conveyance of real estate on the ground of fraud, accident or mistake occurring through the negligence of a title insurance company which insured the title to the property conveyed, could not recover from the company their reasonable counsel fees as part of the expense in the proceedings. However, in the latter case, the Superior Court approved the payment of expenses other than counsel fees, the same not being otherwise described, which were incurred by plaintiffs, and the court further held that:

"If the corporation defendant failed in its duty to complainants, costs, but not counsel fees, would be an element of the measure of damages for the breach": Hackett and Hackett v. Hackett supra, at page 357.

In support of their complaint, plaintiffs cite, in addition to the applicable sections of the Restatement of Torts, Brooks v. Conston, 364 Pa. 256 (1950). This was an equity action for an accounting and other relief, wherein it was alleged that defendant had acquired by actual fraud a chain of nine stores and thereafter added five additional stores to the chain but did not contribute any new capital to the venture, and the court held that defendant was properly ordered to account to plaintiffs for all of the profits made by him, and further imposed upon defendant all the costs of the accounting, including the auditor's fees. Although this suit was in equity, the cause of action was nevertheless based upon defendant's tort of fraud and the court, by its ruling, imposed accounting expenses upon the defendant as one of the damages for which plaintiff could properly obtain redress. On this point, the Supreme Court, at page 264, stated as follows:

"The [lower] court erroneously decreed that the auditor's fee should be 'paid equally by both parties.' The accounting was made necessary only by Conston's

wrongdoing, and the litigation has proved that plaintiffs were entitled to a recovery considerably in excess of that admitted by defendants to be due. Under such circumstances all the costs of the accounting, including the auditor's fee, should have been imposed upon defendant."

In comparing the Brooks ruling with the facts of this case, it is interesting to note that the accounting expenses were allowed as an item of damage, even though they were accrued subsequent to the onset of litigation, such expenses being necessitated by the fraudulent concealment of profits by defendant, and the result of the audit being proof that defendant was required to account to plaintiff for sums substantially larger than he had originally admitted to be due.

We do not think the Brooks case inapposite, because it was founded in equity rather than trespass. An examination of that case will indicate that plaintiff sought complicated forms of relief, in view of the business dealings involved, which would not have been available to him in an action at law, but the form of the action does not in any way change the basic fact that plaintiff's recovery in that case was founded upon the fraud of defendant, just as plaintiff's cause here rests on the alleged fraud of the defendant.

Further, in this case, the accounting expenses accrued prior to the institution of any litigation. We may logically infer from the pleaded facts that these expenses were incurred in the reasonable exercise of discretion by the school directors for perhaps several reasons: First, to determine if, in fact, there had been any loss or misappropriation of public funds; secondly, to determine the exact extent of same; and, thirdly, to fix the identity of the person or persons responsible for their loss or misappropriation. The need for litigation could not have been determined until the accounting expenses were incurred and the report of the accountants received. Thereafter, the litigation which arose was the

prosecution for embezzlement of the defendant secretary, to which charge she pleaded guilty, and which, indirectly, resulted in restitution of most of the misappropriated funds.

The complaint does not directly plead any expenses incidental to the prosecution of the criminal action, but we note parenthetically that one item of the accountants' statement appended to the complaint refers to "conferences with solicitor, district attorney and county detective and appearing as a witness at Dauphin County Court," although no dollar value is assigned for such item of service. None of the other itemized accounting services makes reference to litigation. While, as we here conclude, the bulk of the pleaded damages appear to be proper, it will be for the trial judge to control, depending upon the proofs offered, whether all the elements of accounting expense incurred by plaintiffs are properly chargeable as damages, or whether some may be incidental to litigation and, therefore, not recoverable. It clearly appears from the statement appended to the complaint that the major portion of the accounting services were, as pleaded, necessary to determine the extent of defendant's embezzlement and unlawful appropriation, and we, therefore, hold that such expenditures were damages reasonably and probably flowing directly as a consequence of defendant's tort of fraud, and thus recoverable in this action. In reaching this conclusion, we rely particularly on Brooks v. Conston, supra; Savitz v. Weinstein, supra; Crawford v. Pituch, supra, and the previously cited sections of the Restatement, Torts.

It seems apparent to this court that the school directors, in discharge of the public trust reposed in them, were responsible to use all reasonable and prudent methods in bringing to light any misappropriations of school funds. This would logically include the retention of the services of professional persons who are

trained and experienced in accounting matters, and the expense for these services is a necessary consequence of the results received. Further, the person eventually charged with the culpability for these misappropriations, and who pleaded guilty to the criminal charges in connection therewith, must and could have reasonably forseen that a substantial, concealed misappropriation of school funds would produce the eventuality of the damages here pleaded by plaintiffs.

With particular regard to the item in the accountants' statement for conferences with the attorneys and appearing as a witness in Dauphin County Court, and also in general support of the determination herein made, adequate authority supports the proposition that there are various exceptions to, and modifications of, the rule that counsel fees and expenses of litigation cannot be considered as an element of damages: 15 Am. Jur., Damages, §143; Barnett v. Reed, 51 Pa. 190 (1865), where counsel fees incurred in defending against malicious proceedings were held recoverable; and Shumaker v. Hankey, 158 Pa. Superior Ct. 602 (1946), where counsel fees incurred in a suit to recover for excessive distraint were held proper items of damages.

It is also generally held that where the wrongful act of defendant has involved plaintiff in litigation with others, or placed him in such relation with others as makes it necessary to incur expense to protect his interest, such costs and expenses, including attorneys' fees, should be treated as the legal consequence of the original wrongful act and may be recovered as damages: 15 Am. Jur., Damages, §144, and numerous cases therein cited. Further, it has been held that when the incurrence of attorneys' fees in prior litigation with a third person was the natural and proximate consequence of defendant's tort, the plaintiff was entitled to recover such sum as damages: Restatement, Torts,

§914; Seaboard Surety Co. v. Permacrete Construction Corp., supra; 45 A.L.R. 2d 1183, ff.

We might additionally observe that while plaintiffs have made no demand for same, they would be entitled to claim punitive, or exemplary damages, from defendant, in addition to the claim for compensatory damages here advanced. Under the proper facts, plaintiff in a trespass action for fraud and deceit may be awarded exemplary damages in reasonable amount to compensate him for his trouble, vexation and annoyance, with an added amount by way of punishment to the defendant: Schusler v. Clark, 50 Pa. Superior Ct. 459 (1912). In many jurisdictions where the facts are such as to authorize an award of exemplary damages, counsel fees may be allowed as part of the compensatory damages or be taken into consideration in estimating the exemplary damages: 15 Am. Jur., Damages, §§144, 145.

Although not necessary to this determination because of our holding that the charge for accounting services represents damages naturally flowing as a direct consequence of defendant's tort, rather than an expense incident to litigation, we believe that the foregoing principles furnish additional support for our disposition of this demurrer.

II. *Does the Public School Code Preclude Plaintiffs from Incurring These Accounting Expenses and/or Does It Relieve Defendant of Liability for Same?*

Counsel for defendant, in their brief furnished us at time of argument on this preliminary objection, refer us to sections 2401 and 2433 of the Public School Code of March 10, 1949, P. L. 30, as amended, 24 PS §24-2401 and 24-2433. Section 2401 sets forth general provisions regarding auditing of the finances of every school district and every joint school board, and section 2433 provides for the compensation of auditors in

school districts of the *second* and *third* class. However, the brief filed by plaintiffs refers to the annual audit in districts of the *fourth* class. The complaint is silent as to the class or classes of school districts here involved. We note, however, that section 2401 provides, inter alia, that:

"The finances of every school district and of every joint school board, in every department thereof, together with the accounts of all school treasurers, school depositories, teachers' retirement funds, teachers' institute funds, directors' association funds, sinking funds, and other funds belonging to or controlled by the district shall be properly audited as follows: . . .

"(2) In all school districts of the second, third and fourth class, except as hereinafter otherwise provided, by the controller or auditors of the city, borough, incorporated town, or township in which the whole or the greater or greatest portion of the area of the district is located. . . .

"(4) Any school district of the second, third or fourth class and any joint school board may employ a certified public accountant prior to the end of the fiscal year, and when so employed, such certified public accountant shall audit the finances of such school district or such joint school board for such fiscal year instead of the controller or auditors hereinbefore referred to, and shall have all the powers and duties of such auditors. The compensation of the certified public accountant shall be fixed by the employing board of directors and shall be paid from the funds of the school district or of the joint school board, as the case may be . . ."

Section 2433, pertaining to compensation of auditors in school districts of the second and third class, and section 2443, pertaining to compensation of auditors and certified public accountants in school districts of the fourth class, are not in any way inconsistent with the just quoted provisions of section 2401.

The complaint is silent on the question as to whether the audit by the firm of certified public accountants, whose charge for services is the subject of this action, was contracted for by plaintiff in lieu of the audit by the township auditors for the fiscal years in question. Aware, undoubtedly, of the difficulties inherent in a "speaking demurrer," counsel for defendant offered no allegations regarding same. Plaintiffs, in their brief, suggest that the regular audit of the school finances performed by the township auditors, as provided by the applicable provisions of the Public School Code of 1949, did not disclose any misappropriations or losses, and it was, therefore, necessary to have the financial records scrutinized and examined in detail by a firm of certified public accountants. We find no statutory inhibition, nor has any been called to our attention, against the procedure followed by the plaintiff school districts in this case where they were faced with the possibility of a substantial misappropriation of public funds. As above quoted, the School Code does specifically permit the retention of certified public accountants for the purpose of auditing school finances, and the fixing of their compensation by the school boards concerned.

However, as we understand defendant's argument, she contends that the applicable provisions of the Public School Code authorize alternative methods whereby school districts and joint school boards may comply with the mandate of obtaining annual financial audits and, having selected the usual method of having these audits performed by the township auditors duly elected for such purpose, the plaintiffs were thereafter precluded from, in effect, having a duplicate audit made by an outside firm of accountants.

Additionally, defendant argues that because such audits were required by law, regardless of by whom made, the expenses incident thereto are a proper item

of expenditure for plaintiff school districts, and they cannot relieve themselves of this statutory burden by attempting to pass the costs along to defendant.

Finally, although this contention was not pressed at the time or argument, the demurrer, as filed, suggests that if the regular auditors were originally erroneous in making their audit for the years in question, or if they failed to detect any mistakes or losses, all expenses incidental to eventually discovering and rectifying these inadvertences should be borne either by the plaintiff school districts or by the auditing officials initially responsible.

Under the facts before us, and in view of the statutory provisions above cited, we cannot agree with either the principles or the legalities of the defendant's arguments. A public office is a public trust. Like any other fiduciary or trustee, a public officer is required to exercise common skill and prudence: Marshall Impeachment Case, 363 Pa. 326 (1949). General powers to accomplish the purposes entrusted to officers include incidental powers fairly deducible from the ends to be accomplished: Commonwealth v. Picard, 296 Pa. 120 (1929). Further, public officers acting within the scope of their authority are not to be interfered with in the exercise of their discretion, and their judgment or decision in such matters is not to be dictated by a court: Warner v. Berks County Poor Directors, 38 Pa. Superior Ct. 437 (1909).

Under the facts as pleaded in the complaint, and the inferences reasonably and logically deducible therefrom, we cannot conclude that the directors of either the Halifax Joint School System, or the member districts, exceeded or violated the authority conferred upon them by the Public School Code when they ordered these audits to determine the extent of defendant's misappropriations, and which resulted in these accounting expenses. Likewise, it does not appear from

the facts, or the cited sections of the Public School Code, that either the school directors or the township auditors should be charged with the financial responsibility incurred as a natural consequence of the defendant's tort. Where the proximate causation of these damages is the tort of defendant secretary, it does not seem that she should be relieved from liability for the damages at the expense of either the officials or the taxpayers and citizens of the plaintiff school districts. We, therefore, conclude that the provisions of the Public School Code of 1949 do not require that this complaint be dismissed. . . .  *Order*

And now, November 5, 1962, defendant's preliminary objection to plaintiffs' complaint in the nature of a demurrer is hereby overruled, and defendant is directed to file any necessary responsive pleading to the complaint within 20 days from the date hereof. The prothonotary shall notify the parties or their counsel of the entry of this order forthwith.