**COMMONWEALTH of Pennsylvania,**

v.

**Paul FEINEIGLE, Appellant.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Aug. 9, 1996.
Decided Feb. 11, 1997.

Russell C. Miller, Allison Park, for appellant.

Gary J. Gushard, Pittsburgh, for appellee.

Before McGINLEY and FRIEDMAN, JJ., and NARICK, Senior Judge.

McGINLEY, Judge.

Paul Feineigle (Feineigle) appeals the September 26, 1995, order of the Court of Common Pleas of Allegheny County (trial court) affirming his summary conviction for fire code violations in the Township of Pine (Township) and directing a fine of $300.00 plus costs.

The facts of this case are undisputed.[1] On December 16, 1994, the Pine Township Fire Marshall, Martin McKinney (Fire Marshall) inspected an auto repair garage owned and operated by Feineigle. Thereafter, the Fire Marshall sent Feineigle a certified letter dated December 16, 1994, which provided in pertinent part:

> Please be advised, as per my verbal conversation with you on Friday, December 16, 1994, at approximately 2:35 p.m., that you are in direct violation of the BOCA National Fire Prevention Code, Section F–110.0 "Unsafe Conditions [sic]; F–110.1, F–110.2, F–110.3, F–110.6, F–110.7, and F–110.9, copies enclosed.
>
> I will allow you a total of ninety (90) calendar days to correct the above-mentioned unsafe conditions, at which time another inspection will be made.
>
> If you should have any unanswered questions, pertaining to this inspection, please feel free to contact me or Scott Anderson, Zoning Officer.

Fire Marshall's Letter, December 16, 1994; R.R. at 36a. As stated in the letter, the Fire Marshall provided copies of Section F–110 of the BOCA Code to Feineigle.[2]

---

1. At the outset, this Court notes that the parties have stipulated that Section F–110 of the Building Officials and Code Administrators National Fire Prevention Code of 1993 (BOCA Code), a national model code dedicated to the improvement of fire regulations and designed for adoption by state or local governments, is applicable as incorporated by the Township. Notes of Testimony, September 26, 1995, (N.T.) at 3; Reproduced Record (R.R.) at 6a.

2. Section F–110, as provided to Feineigle, reads in relevant part as follows:

**SECTION F–110.0 UNSAFE CONDITIONS**
**F–110.1 General:** Whenever the code official shall find in any structure or upon any premises dangerous or *hazardous* conditions or *materials* as follows, the code official shall order such dangerous conditions or materials to be

On April 25, 1995, the Fire Marshall revisited Feineigle's garage and, over Feineigle's objection, took photographs from outside the entrance to the garage. Subsequently, the Fire Marshall cited Feineigle for violation of Section F–110 of the BOCA Code related to unsafe conditions. Citation No. 1220412N, April 25, 1995; R.R. at 2a. Again, the Fire Marshall provided copies of Section F–110 of the BOCA Code to Feineigle. Feineigle challenged the citation before the District Justice who upheld the Fire Marshall's citation. Feineigle appealed.

On appeal to the trial court, the Fire Marshall testified that he observed Feineigle's garage during the course of a routine inspection of commercial properties in the Township and found that the contents of Feineigle's garage were "in very much disarray. . . . Everything is just piled in there, stacked up in there in piles." N.T. at 5; R.R. at 8a. The Fire Marshall stated that he warned Feineigle about the disorganization of the contents in the garage and *"told him* that he should have some [sic] stack to [sic] them in an orderly fashion to gain [sic] entrance to it in the event that we had a problem, that [sic] there was a fire or anything in there; and *that the firemen were not taking their lives into his own* [sic]

*hands to gain entrance into his building."* (Emphasis added). N.T. at 6; R.R. at 9a.[3] The Fire Marshall also testified that upon his second visit to the property he observed conditions that would interfere with the efficiency of the operation of fire protection services and equipment as evidenced by the photographs.

Feineigle testified that he purchased automobile parts in advance and stored them in the garage because he worked mostly evenings and weekends. Feineigle stated "[t]hat is why I have so much down there. It is hard to—you can't buy parts if you work with the local auto parts store. It closes at six o'clock. If you need it, you have to have it. If you don't have it, you are stuck. You can't finish the job." N.T. at 25; R.R. at 28a.

During the hearing, the photographs taken by the Fire Marshall during the second visit to the garage were introduced. Feineigle's counsel asserted that the photographs resulted from a warrantless search and moved for suppression. The trial court denied the motion on the ground that the photographs were not a physical entry.

The trial court concluded (1) that an accumulation of automobile parts at Feineigle's garage substantially interfered with fire pro-

removed or remedied in accordance with the provisions of this code:

   1. Dangerous conditions liable to cause or contribute to the spread of fire in or on said premises or structure or endanger the occupants thereof.
   2. Conditions which interfere with the efficiency or operation of any *fire protection* equipment and *system.*
   3. Obstructions to or on fire escapes, stairs, passageways, doors or windows, which are liable to interfere with the egress of occupants or the operation of the fire department in case of a fire.
   . . . .
   10. All equipment, materials, processes or operations which are in violation of the provisions and intent of this code.
**F–110.2 Maintenance:** All equipment, systems, devices and safeguards required by this code or a previous statute or code for the structure or premises when erected or altered shall be maintained in good working order. *The requirements of this code are not intended to provide the basis for removal or abrogation of fire protection* and safety *systems* and devices in existing structures.

**F–110.2.1 Occupant responsibility:** If an occupant of a structure creates conditions in violation of this code, by virtue of storage, handling and use of substances, materials, devices and appliances, the occupant shall be held responsible for the abatement of said hazardous conditions.
**F–110.3 Unsafe conditions:** All structures or existing equipment that are or hereafter become unsafe or deficient because of inadequate *means of egress* facilities or which constitute a fire hazard, or are otherwise dangerous to human life or the public welfare, or which involve illegal or improper occupancy or inadequate maintenance, shall be deemed an unsafe condition. A vacant structure which is not secured against entry shall be deemed unsafe. Unsafe structures or equipment shall be reported to the building code official who shall take appropriate action as deemed necessary under the provisions of the building code listed in Chapter 44. (Emphasis in original).
BOCA Code; R.R. at 38a.

**3.** We note that this testimony corroborated the fact the Feineigle received a verbal warning from the Fire Marshall regarding his BOCA Code violations as stated in the December 16, 1994, letter.

tection capabilities; (2) that Feineigle was adequately warned that these conditions were in violation of Township standards; (3) that Feineigle was provided ninety days in which to comply with the Fire Marshall's request to correct the conditions; and (4) that Feineigle failed to ˙ correct the conditions. The trial court adjudged Feineigle guilty and sentenced him to pay a $300.00 fine plus costs.[4]

██ On appeal to this Court, Feineigle contends (1) that his due process rights under the Fourteenth Amendment of the United States Constitution were violated because the Fire Marshall's citation did not sufficiently describe his alleged violation of the BOCA Code; and (2) that photographs of the garage taken by the Fire Marshall and admitted into evidence should have been suppressed.[5] Our scope of review in this case is limited to determining whether constitutional rights were violated or whether the trial court abused its discretion or committed an error of law. *Commonwealth v. Karn*, 168 Pa.Cmwlth. 435, 650 A.2d 1176 (1994).

██ Initially, Feineigle contends that he was not adequately appraised of the prohibited conduct for which he was convicted. He argues that neither the citation nor the provision of the BOCA Code put him on notice of the prohibited conduct. It is well established that the essential elements of a summary offense must be set forth in the citation so that the defendant has fair notice of the nature of the unlawful act for which he is charged. *Hill v. Commonwealth*, 68 Pa. Cmwlth. 71, 448 A.2d 106 (1982).

██ Here, the Fire Marshall attempted to conduct a routine inspection of Feineigle's garage at which time he stood at the entrance and observed the voluminous and disorganized clutter that would obstruct fire personnel if a fire occurred. The Fire Marshall verbally informed Feineigle of his violations, then sent a certified letter warning Feineigle that he had ninety days in which to comply with Section F–110 of the Boca Code. The Fire Marshall's mailing contained a copy of Section F–110. Long past the ninety day grace period, the Fire Marshall revisited the garage and took photographs of the unorganized, randomly piled contents of the garage which created an unsafe condition and prevented safe ingress and egress. The Fire Marshall charged Feineigle with violations of Section F–110 which was incorporated in the Township ordinance, and included a copy of Section F–110 when he mailed the citation. Under these circumstances, we hold that Feineigle was adequately notified of the nature of the unlawful acts for which he was charged and ultimately convicted. Furthermore, after a hearing on the merits before the District Justice there was a *de novo* hearing in the trial court. Unquestionably Feineigle was not prejudiced by the vagueness of the citation, assuming it was inadequate.

Next, we address Feineigle's contention that the Fourth Amendment protection against unreasonable searches and seizures

---

4. We note that the trial court filed a concise opinion which set forth its reasoning. We disagree with Feineigle's contention that the trial court has not complied with Pa.R.A.P. 1925(a) which provides as follows:

    (a) **General Rule.** Upon receipt of the notice of appeal the judge who entered the order appealed from, if the reasons for the order do not already appear of record, shall forthwith file of record at least a brief statement, in the form of an opinion, of the reasons for the order, or for the rulings or other matters complained of, or shall specify in writing the place in the record where such reasons may be found.

5. We note that Feineigle also alleges that the provisions of the BOCA Code were "discriminatorily enforced." Feineigle's Brief at 6. However, he presented no evidence to prove this assertion and made no more than a passing reference in his summary of argument. "When issues are not properly raised and developed in briefs, when the briefs are wholly inadequate to present specific issues for review, a court will not consider the merits thereof." *Wicker v. Civil Service Commission*, 74 Pa.Cmwlth. 548, 460 A.2d 407, 408 (1983) (quoting *Commonwealth v. Sanford*, 299 Pa.Super. 64, 67, 445 A.2d 149, 150 (1982)). Feineigle has failed to argue the issue in his brief as required by Pa.R.A.P. 2119(a):

    The argument shall be divided into as many parts as there are questions to be argued; and shall have at the head of each part—in distinctive type or in type distinctively displayed—the particular point treated ˙therein, *followed by such discussion and citation of authorities as are deemed pertinent.* (Emphasis added).

was violated when the Fire Marshall took photographs of the interior of his garage. Feineigle argues that the photographs should have been suppressed at trial. In *See v. City of Seattle*, 387 U.S. 541, 87 S.Ct. 1737, 18 L.Ed.2d 943 (1967), our United States Supreme Court held that the Fourth Amendment protections against unreasonable searches do extend to administrative inspections of the portions of commercial properties which are not open to the public. In so holding, the Supreme Court stated that "[w]e do not in any way imply that business premises may not reasonably be inspected in many more situations than private homes...." *Id.* at 545–547, 87 S.Ct. at 1740–1741. Subsequently, the Supreme Court permitted certain warrantless searches of administratively regulated commercial property. "The greater latitude to conduct warrantless inspections of commercial property reflects the fact that the expectation of privacy that an owner of a commercial property enjoys in such property differs significantly from the sanctity accorded an individual's home...." *Donovan v. Dewey*, 452 U.S. 594, 598–599, 101 S.Ct. 2534, 2537–2538, 69 L.Ed.2d 262 (1981).

■ In the present matter, the Fire Marshall entered Feineigle's property during the course of a routine fire inspection of commercial properties in the Township. Feineigle objected to the Fire Marshall taking photographs from outside the entrance to the garage, but Feineigle never objected to the Fire Marshall standing at the entrance of the garage with the door wide open and with the contents in plain view. With the exception of the photographs, the Fire Marshall's inspection of Feineigle's property was entirely consensual. Feineigle as an owner of a commercial enterprise had no reasonable expectation of privacy in that portion of his property which was open to the public. The Fire Marshall was in a place where he was lawfully authorized to be; no unlawful inspection took place.

Accordingly, we affirm.

## ORDER

AND NOW, this 11th day of February, 1997, the order of the Court of Common Pleas of Allegheny County in the above-captioned matter is affirmed.

FRIEDMAN, Judge, dissenting.

I respectfully dissent. Unlike the majority, I believe that the photographs taken by the Fire Marshall were the result of an illegal search and, therefore, should have been suppressed by the trial court as violative of Feineigle's Fourth Amendment right to protection against unreasonable searches. Thus, I would reverse the trial court's order.

In reaching a contrary result, the majority, citing *Donovan v. Dewey*, 452 U.S. 594, 101 S.Ct. 2534, 69 L.Ed.2d 262 (1981), states that "certain warrantless searches of administratively regulated commercial property" are permitted. (Majority op. at 9.) However, the majority never identifies the particular circumstances which, under *Donovan*, permit a warrantless search. *Donovan* allows a warrantless search only where the relevant regulatory scheme adequately protects the privacy interest of the commercial property owner.[1]

The issue in *Donovan* was whether section 103(a) of the Federal Mine Safety and Health Act of 1977, 30 U.S.C. § 813(a), violates the Fourth Amendment because it authorizes warrantless inspections of underground and surface mines. The U.S. Supreme Court held:

a warrant may *not* be constitutionally required [1] when Congress has reasonably

---

1. The majority properly quotes *Donovan* as follows:

   "The greater latitude to conduct warrantless inspections of commercial property reflects the fact that the expectation of privacy that an owner of a commercial property enjoys in such property differs significantly from the sanctity accorded an individual's home...." *Donovan v. Dewey*, 452 U.S. 594, 598–599, 101 S.Ct. 2534, 2538, 69 L.Ed.2d 262 (1981).

   (Majority op. at 9–10.) However, the majority omits the remaining portion of the statement: and [the greater latitude to conduct warrantless inspections of commercial property also reflects the fact] that this privacy interest *may, in certain circumstances, be adequately protected by regulatory schemes authorizing warrantless inspections.* *Donovan*, 452 U.S. at 599, 101 S.Ct. at 2538 (emphasis added).

determined that warrantless searches are *necessary to further a regulatory scheme* and [2] the federal regulatory presence is *sufficiently comprehensive and defined* that the owner of commercial property cannot help but be aware that his property will be subject to periodic inspections undertaken for specific purposes.

*Donovan,* 452 U.S. at 600, 101 S.Ct. at 2538 (emphasis added).[2]

To illustrate its holding, the Court noted that a warrant is constitutionally *required* for an administrative inspection under section 8(a) of the Occupational Safety and Health Act of 1970 (OSHA), 29 U.S.C. § 657(a). The Court gave two reasons why OSHA's regulatory scheme is *not* sufficiently comprehensive and defined to permit warrantless administrative inspections. First, the act fails to tailor the scope and frequency of administrative inspections to the particular health and safety concerns posed by the numerous and varied businesses regulated by the statute. Instead, the act flatly authorizes administrative inspections of *any* workplace and empowers inspectors to investigate *any* condition and to question *any* employer, owner, operator, agent or employee. Second, the act does not provide any standards to guide inspectors either in their selection of establishments to be searched or in the exercise of their authority to search. Rather, the statute simply provides that searches be performed *at reasonable times and within reasonable limits and in a reasonable manner.* *Donovan.*

Here, the Fire Marshall conducted his inspection pursuant to the Building Officials and Code Administrators National Fire Prevention Code of 1993 (BOCA Code). Section F–110.1 of the BOCA Code provides:

Whenever the code official shall find in *any* structure or upon *any* premises dangerous . . . conditions . . . , the code official shall order such dangerous conditions . . . to be . . . remedied in accordance with the provisions of this code.

(R.R. at 38a.) (Emphasis added.) Section F–108.3 of the BOCA Code states:

The code official is authorized to enter the structure of premises *at any reasonable time* to inspect. Prior to entering into a space not otherwise open to the general public, the code official shall . . . request entry. *If requested entry is refused or not obtained, the code official shall pursue recourse as provided by law.*

(R.R. at 38a.) (Emphasis added.)

First, it is apparent to me that, unlike the Federal Mine Safety and Health Act of 1977, the BOCA Code does *not* authorize warrantless inspections. Thus, the law-making body did not believe that warrantless searches are necessary to further the regulatory scheme. *See Donovan, supra.* Quite the contrary, the BOCA Code explicitly requires that, when entry is refused or not obtained, the code official must "pursue recourse as provided by law." Second, like the OSHA scheme, the BOCA Code provides that the Fire Marshall may inspect *any* structure or premises *at reasonable times.* The U.S. Supreme Court has determined that such language is not sufficiently comprehensive and defined to protect the privacy interest of a commercial property owner. Because none of the circumstances permitting warrantless searches in *Donovan* are present here, I must conclude that, under *Donovan,* the Fire Marshall is *required* to obtain a warrant prior to making an administrative inspection.

Indeed, the U.S. Supreme Court has stated that businesses have a constitutional right to *insist* that inspectors obtain a warrant to search.[3] *Camara v. Municipal Court,* 387 U.S. 523, 87 S.Ct. 1727, 18 L.Ed.2d 930 (1967). Here, Feineigle exercised that constitutional right by refusing to allow the Fire

---

**2.** The U.S. Supreme Court has allowed warrantless inspections with respect to the sale of alcoholic beverages and firearms. *Donovan.* This case, however, does not involve such heavily regulated industries.

**3.** It is not difficult to obtain a search warrant for routine and periodic inspections. Under *Camara v. Municipal Court,* 387 U.S. 523, 87 S.Ct. 1727, 18 L.Ed.2d 930 (1967), an inspector may obtain a warrant for an administrative search merely

because of the passage of time since the previous inspection or because of the nature of the building to be inspected.

The warrant procedure is designed to guarantee that a decision to search private property is justified by a reasonable governmental interest. But reasonableness is still the ultimate standard. *If a valid public interest justifies the intrusion contemplated, then there is probable cause to issue a suitably restricted search war-*

Marshall to enter his garage or to take photographs of the interior of his garage.[4] Feineigle could not have expressed more clearly that, to Feineigle, the inside of his garage was *private*. Thus, contrary to the majority's view, the Fire Marshall did *not* have any right to be on Feineigle's property without a warrant to inspect the garage or to take photographs of the garage's interior, especially after Feineigle explicitly prohibited the use of a camera. In taking the pictures without permission and without a warrant, the Fire Marshall violated Feineigle's constitutional right to privacy. Thus, the photographs which resulted from the inspection should have been suppressed by the trial court.

Accordingly, I would reverse.

*rant.* ... Such an approach neither endangers time-honored doctrines applicable to criminal investigations nor makes a nullity of the probable cause requirement in this area. It merely gives full recognition to the competing public and private interests here at stake and, in so doing, *best fulfills the historic purpose behind the constitutional right to be free from unreasonable government invasions of privacy.*
*Camara*, 387 U.S. at 539, 87 S.Ct. at 1736 (emphasis added) (citation omitted).

4. The Fire Marshall himself testified as follows:
Q  All right. Now, I believe ... you said that [Feineigle] would not ... give you entrance to the garage.
A  That's correct.
Q  And you had a police officer there with you.
A  Yes, sir, I did.
Q  And you had no search warrant.
A  No, sir, I did not.
Q  Okay. And did [Feineigle] say: I do not want you to come in here?
A  That's correct.
Q  And, yet, you still took some photographs of the inside of the structure.
A  Standing on the outside looking in.
Q  All right. And he told you he didn't want you to do that.
A  That's correct.
(R.R. at 18a.)