**COMMONWEALTH of Pennsylvania**

v.

**Wilbur WALTZ, Appellant.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Feb. 9, 2000.
Decided April 17, 2000.

---

Wilbur C. Waltz, Jr., appellant, pro se.

Michael J. Barrasse, Dist. Atty., and William P. O'Malley, Asst. Dist. Atty., Scranton, for appellee.

Before DOYLE, President Judge, McGINLEY, J., SMITH, J., FRIEDMAN, J., KELLEY, J., FLAHERTY, J., and LEADBETTER, J.

SMITH, Judge.

Wilbur Waltz appeals from the order of the Court of Common Pleas of Lackawanna County that found him guilty of violating provisions of the Liquid Fuels and Fuels Tax Act (Act), Chapter 90 of the Vehicle Code, 75 Pa.C.S. §§ 9001–9022. Waltz appealed to the trial court from his conviction by a district justice. Specifically, the trial court found Waltz guilty of the summary offense of refusing to permit agents of the Department of Revenue (DOR) to inspect the fuel in the tank of his truck, parked in the driveway of his home, in violation of Section 9019(g) of the Act, 75 Pa.C.S. § 9019(g). The court imposed a $1000 fine and costs. Waltz questions whether the trial court erred in rejecting his arguments that a warrantless search violated his constitutional rights and that, as a private citizen, he was not subject to administrative searches; whether the court also erred in rejecting his argument that a warrant was required because the search involved here was part of a criminal investigation rather than an administrative inspection; and whether the statute violates his constitutional rights.

DOR enforcement agent Neil Hochreiter testified for the Commonwealth at the de novo proceeding before the trial court that under the Act only clear diesel fuel, which has been taxed, may be used in vehicles that travel on the roads of the Commonwealth; untaxed dyed diesel fuel may be used for off-road applications such as in farm equipment and for home heating. He testified that about a week after receiving an anonymous telephone call stating that Waltz had been heard boasting of using dyed fuel and saving money, he and another agent went to Waltz' home at 8:00 a.m. on February 5, 1998. They told Waltz that they were there to inspect the fuel tank of his truck, and he responded

that they would not do so without a search warrant. The agents observed a hose with a nozzle coming from the garage next to where the truck was parked; Waltz stated to the agents that he had a tank in the garage which he used to fuel a tractor.

■ The agents departed and shortly thereafter issued the citation against Waltz under Section 9019(g)(2) of the Act for failure to allow fuel inspection to determine the composition of fuel. In response to a question as to whether the search was in any way part of a criminal investigation, Agent Hochreiter stated that "[t]he citation of the [V]ehicle [C]ode is a criminal investigation" but that his agency investigates "[m]ainly administrative violations. This is a process that we deal with day in and day out." N.T. at p. 15. On cross-examination by Waltz, the agent testified that no one had refused an inspection before and that he did not need a warrant to search because the agents had the ability to cite him right there, and the fine is the same either way. The trial court ruled that Waltz was guilty based on its conclusion that Section 9019(g) of the Act plainly authorizes DOR agents to perform the type of inspection that they sought to conduct here. The court did not rule upon Waltz' constitutional challenges, stating that such arguments could be raised to the appellate courts.[1]

## I

The Commonwealth advances procedural arguments as to why Waltz' constitutional challenges should not be considered. The Commonwealth contends that two separate bases exist for a conclusion that Waltz has waived the right to make these arguments. Initially, it asserts that *Marshall Impeachment Case,* 363 Pa. 326, 69 A.2d 619 (1949), requires a constitutional challenge to be raised at the earliest possible time. In *Marshall,* however, the Supreme Court held simply that where a city official raised some constitutional challenges to a statute by way of preliminary objections at the outset of his impeachment case, he could not raise a separate constitutional challenge for the first time before the Supreme Court. The case therefore does not stand for the proposition attributed to it, and it has no application to the present case.

■ Further, the Court notes that appeals to courts of common pleas from convictions in summary proceedings are governed by Pa. R.Crim. P. 86, which provides in subpart (G) that appeals from the summary proceedings shall be heard de novo by the court of common pleas. It has been held under the predecessor to Rule 86(G) that an issue not raised before a district justice was not waived and that even the failure to challenge a citation before a district justice did not preclude the court of common pleas from considering the issue in the de novo trial. *Commonwealth v. Patterson,* 27 Pa. D. & C.3d 349 (1983). See also *Commonwealth v. Toner,* 444 Pa.Super. 30, 663 A.2d 202 (1995), which holds that on appeal to the court of common pleas from a summary conviction pursuant to Rule 86(G), the court must conduct de novo review, even if the conviction resulted from a guilty plea. Therefore, the Court concludes that Waltz did not waive his constitutional challenge regardless of what occurred before the district justice.[2]

---

1. The Court's review of a conviction for a summary offense is limited to determining whether constitutional rights were violated or whether the trial court abused its discretion or committed an error of law. *Commonwealth v. Feineigle,* 690 A.2d 748 (Pa.Cmwlth. 1997).

2. The Commonwealth's assertion that Waltz waived his challenges by not testifying is equally without merit. Although Waltz did not testify or offer evidence beyond that provided by Agent Hochreiter in direct and cross-examination, the transcript shows unmistakably that Waltz elicited testimony related to his constitutional challenges and that he raised these challenges in closing argument to the trial court.

■ The Commonwealth's second stated basis for a claim of waiver is the asserted failure of Waltz to comply with Pa. R.A.P. 2117(c) and 2119(e), which require a statement of the place of raising or preserving issues in the statement of the case and the argument sections of the appellate brief, respectively. This Court has held in particular cases, however, that such defects did not preclude meaningful appellate review or necessarily cause all of an appellant's issues to be waived. *Eltoron, Inc. v. Zoning Hearing Board of the City of Aliquippa*, 729 A.2d 149 (Pa.Cmwlth.1999) (declining to find waiver based upon Pa. R.A.P. 302(a), 2117(c) and 2119(e) where compliance, although technically defective, did not preclude meaningful review of the issue on appeal); *see also Roseberry Life Ins. Co. v. Zoning Hearing Board of the City of McKeesport*, 664 A.2d 688 (Pa. Cmwlth.1995). In the present case it is readily apparent from closing argument that Waltz raised his constitutional challenges, and his failure to comply with the technical requirement of the above rules of appellate procedure does not constitute waiver.

## II

■ Sections 9019(c)(1) and (d)(3) of the Act provide that a person may not operate a motor vehicle on the public highways of this Commonwealth with dyed diesel fuel in the fuel supply tank unless authorized to do so under a federal law or regulation. Section 9019(e), relating to "Criminal penalty," provides that "[a] person who violates any provision of subsec-

tion (d) commits a summary offense and shall, upon conviction, be sentenced to pay a fine of not less than $100 nor more than $2,000 or to imprisonment for not more than 90 days, or both." [3] Section 9019(g) provides:

(1) Any revenue enforcement agent or other person authorized by [DOR] may enter any place where fuels are produced or stored and may physically inspect any tank, reservoir or other container that can be used for the production, storage or transportation of diesel fuel, diesel fuel dyes or diesel fuel markers. Inspection may also be made of any equipment used for or in connection with the production, storage or transportation of diesel fuel, diesel fuel dyes or diesel fuel markers. This includes any equipment used for the dyeing or marking of diesel fuel. Books, records and other documents may be inspected to determine tax liability. An agent may detain a vehicle, vessel or railroad tank car placed on a customer's siding for use or storage ... to determine the amount and composition of the fuel. An agent may take and remove samples of diesel fuel in reasonable quantities necessary to determine the composition of the fuel.

(2) A person that refuses to allow an inspection as provided in this subsection commits a summary offense and shall, upon conviction, be sentenced to pay a fine of not less than $1,000 nor more than $2,000 for each refusal.

■ Waltz first quotes the Fourth Amendment to the United States Constitution [4] and argues that searches of private

---

**3.** Section 9019(f) provides for a civil penalty in addition to the criminal penalty provided in Section 9019(e). Although Section 106 of the Crimes Code, *as amended*, 18 Pa.C.S. § 106, defines summary offenses as a category distinct from "crimes," there is no question that prosecutions of summary offenses are criminal proceedings, and certain basic criminal procedural protections apply. *See Commonwealth v. Gibson*, 536 Pa. 123, 638 A.2d 203 (1994) (reversing convictions for the summary offense of underage drinking where the

police lacked probable cause for the search that produced the central evidence).

**4.** The Fourth Amendment provides:

The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

property without consent or a warrant are unreasonable, except in certain carefully defined classes of cases. As the Pennsylvania Supreme Court noted in *Commonwealth v. Slaton*, 530 Pa. 207, 608 A.2d 5 (1992), the United States Supreme Court. has held that administrative inspections or searches that may be conducted without a warrant must satisfy the requirements set forth in *New York v. Burger*, 482 U.S. 691, 107 S.Ct. 2636, 96 L.Ed.2d 601 (1987). Those requirements are:

> First, there must be a 'substantial' government interest that informs the regulatory scheme pursuant to which the inspection is made.

> Second, the warrantless inspections must be 'necessary to further [the] regulatory scheme.' *Donovan v. Dewey*, 452 U.S., [594] at 600, 101 S.Ct., [2534] at 2539 [69 L.Ed.2d 262 at 270 (1981)]. For example, in *Dewey* we recognized that forcing mine inspectors to obtain a warrant before every inspection might alert mine owners or operators to the impending inspection, thereby frustrating the purposes of the Mine Safety and Health Act—to detect and thus to deter safety and health violations. *Id.*, at 603, 101 S.Ct., at 2540 [69 L.Ed. at 271–272].

> Finally, 'the statute's inspection program, in terms of the certainty and regularity of its application, [must] provid[e] a constitutionally adequate substitute for a warrant.' *Ibid.* In other words, the regulatory statute must perform the two basic functions of a warrant: it must advise the owner of the commercial premises that the search is being made pursuant to the law and has a properly defined scope, and it must limit the discretion of the inspecting officers.

*Id.* at 702–703, 107 S.Ct. at 2644, 96 L.Ed.2d at 614 (citations omitted).

Article I, Section 8 of the Pennsylvania Constitution, also quoted by Waltz in his brief, is similar, but it has been held to provide greater protection against unreasonable searches and seizures than the Fourth Amendment.

The Commonwealth offered no evidence and never has contended that Waltz was involved in any heavily regulated commercial activity at his residence. As Waltz emphasizes, however, cases approving warrantless administrative inspections all concern inspections of commercial property. *See, e.g., Colonnade Catering Corp. v. United States*, 397 U.S. 72, 90 S.Ct. 774, 25 L.Ed.2d 60 (1970) (inspections under historical close supervision of alcoholic beverage industry); *United States v. Biswell*, 406 U.S. 311, 92 S.Ct. 1593, 32 L.Ed.2d 87 (1972) (comprehensive and predictable inspection scheme under federal gun control legislation); *Dewey* (regular inspections of quarries under federal mine safety legislation permitted without warrants); *Burger* (routine inspection of records of vehicle dismantler pursuant to regulatory statute).

■ The cases cited above uniformly recognize that absent consent or exigent circumstances, a private home may not be entered to conduct a search or to effect an arrest without a warrant. *Dewey*, 452 U.S. at 598 n. 6, 101 S.Ct. at 2538 n. 6, 69 L.Ed.2d at 268 n. 6 (citing *Steagald v. United States*, 451 U.S. 204, 101 S.Ct. 1642, 68 L.Ed.2d 38 (1981)). In addition, the curtilage area surrounding a private home where the occupants have a reasonable expectation of privacy that society is prepared to accept has been held to be protected by the Fourth Amendment. *Commonwealth v. Lemanski*, 365 Pa.Super. 332, 529 A.2d 1085 (1987) (citing *Dow Chemical Co. v. United States*, 476 U.S. 227, 106 S.Ct. 1819, 90 L.Ed.2d 226 (1986)). The Court agrees with Waltz that the circumstances of this case do not approach the situations in which warrantless administrative inspections have been held to be permissible. Therefore, absent Waltz'

*Commonwealth v. Jackson*, 548 Pa. 484, 698 A.2d 571 (1997). However, Waltz did not raise an issue of the application of Article I, Section 8 before the trial court, and it therefore is waived. Pa. R.A.P. 302(a).

consent, a warrant was required to conduct a search of his private property.

## III

In the alternative, Waltz contends that case law relating to administrative searches does not apply at all, because the search in this instance was conducted solely to investigate alleged criminal activity, with no routine administrative purpose even being asserted. Waltz points out that in *Slaton* narcotics officers who requested access to the records of the proprietor of a pharmacy were not engaged in any form of routine inspection. Rather, they initially sought evidence of suspected forgery of prescriptions by a third party, and subsequently they sought evidence of such criminal activity by the proprietor. The Pennsylvania Supreme Court held that in that situation the traditional Fourth Amendment requirement of a warrant or of some exception such as voluntary consent was required.

The Court notes that the Supreme Court again considered the situation where police officers are searching for evidence of a crime in the context of a highly regulated industry in *Commonwealth v. Petroll*, 558 Pa. 565, 738 A.2d 993 (1999). In that case a tractor-trailer ran into stopped traffic at high speed, causing a chain reaction of collisions and killing the three members of the family in the automobile that was struck first. A police officer entered the cab of the truck to set the brake, and he discovered and seized the driver's logbook, a bank bag containing toll receipts and another bag containing shipping invoices and other documents. At the driver's trial for homicide by vehicle, the Commonwealth argued that the seizure of the items without a warrant was authorized by Section 4704 of the Vehicle Code, *as amended*, 75 Pa.C.S. § 4704, which authorizes police and qualified Common-

wealth employees to inspect vehicles, drivers, documents, equipment or loads if they have probable cause to believe that the vehicles, documents, equipment or loads are unsafe or otherwise not in compliance with law.

Notwithstanding the fact that commercial trucking is a highly regulated industry, the Supreme Court concluded that Section 4704 must be read in the context of the rest of the Chapter 47 provisions relating to inspection of vehicles and that it authorizes inspections to discover ongoing violations in order to prevent future harm; the provision does not grant police unlimited discretion to search a driver or vehicle for evidence of a crime. The same rationale applied to Section 6308(b) of the Vehicle Code, *as amended*, 75 Pa.C.S. § 6308(b). The Supreme Court held: *"The closely regulated business exception to the probable cause and warrant requirements is not applicable in criminal cases. The police cannot conduct a warrantless administrative search to advance a criminal investigation under the pretext of addressing a specific, compelling governmental interest advanced by a statutory scheme." Petroll*, 558 Pa. at 584, 738 A.2d at 1003—1004 (emphasis added) (citing *Slaton*, 530 Pa. at 214, 608 A.2d at 8; *Commonwealth v. Hudak*, 710 A.2d 1213, 1217 (Pa.Super.1998); and *Burger*, 482 U.S. at 717 n. 27, 107 S.Ct. at 2651 n. 27, 96 L.Ed.2d at 623 n. 27).

The Court again agrees with Waltz. Despite Agent Hochreiter's characterization of his activity as having an administrative purpose, the record is clear that the agents' sole objective was to advance a criminal investigation. Accordingly, the traditional Fourth Amendment warrant requirement applied, unless some other exception authorized a warrantless search.[5]

---

**5.** The courts have recognized an exception to the warrant requirement for vehicle searches where there is probable cause to believe that the vehicle contains evidence of criminal activity, unless the vehicle is searched or impounded the occupants are likely to drive away, and they may never again be located, and the police obtained this information in

such a way that they could not have secured a warrant for the search, i.e., there are exigent circumstances. *Commonwealth v. White*, 543 Pa. 45, 669 A.2d 896 (1995). In *Commonwealth v. Luv*, 557 Pa. 570, 581, 735 A.2d 87, 93 (1999), after reviewing several vehicle search cases, the Supreme Court stated: "The determining factors in all of these cases are

Because the Commonwealth raised only procedural challenges, it has waived any arguments that it might have asserted on the merits of the legality of the search. Pa. R.A.P. 302(a). Thus, for the reasons discussed, Waltz may not be penalized for asserting his right not to have a search of his private property conducted without a warrant.[6] The conviction of Waltz under Section 9019(g)(2) of the Act for refusal to permit a warrantless search is reversed. In view of the rationale adopted by the Court to support its conclusion, the Court need not address Waltz' last basis for challenging his conviction.

### ORDER

AND NOW, this 17th day of April, 2000, the order of the Court of Common Pleas of Lackawanna County finding Wilbur Waltz guilty of violating Section 9019(g)(2) of the Liquid Fuels and Fuels Tax Act and imposing a fine and costs is reversed.

Judge LEADBETTER dissents.

McGINLEY, Judge, dissenting.

I respectfully dissent to the majority's conclusion that a search warrant was required. The Department of Revenue (Department) was conducting an administrative inspection to ascertain whether untaxed diesel fuel was used in vehicles that travel on the roads of the Commonwealth.[1]

Administrative searches without a warrant are permitted when there is substantial government interest, the search is necessary to further the regulatory scheme and the inspection program provides a constitutionally adequate substitute for a warrant. *New York v. Burger*, 482 U.S. 691, 107 S.Ct. 2636, 96 L.Ed.2d 601 (1987). Waltz was required to comply with the provisions of the Vehicle Code which authorized the Department to inspect motor vehicles for compliance with its mandates.[2] Waltz' vehicle was observed on public roads by DOR agents who presented receipts from several local suppliers that he purchased untaxed diesel fuel.

Additionally, we note that there was no search of Waltz' property. Waltz was cited for refusing to allow an inspection of fuel contained in a registered motor vehicle. The Vehicle Code provides sanctions for refusals. Operators are required under the Vehicle Code to submit to a warrantless search in several instances where probable cause exists: taking a breathalyzer test, providing a blood sampling, as well as permitting inspection of vehicles for suspected untaxed diesel fuel. The General Assembly has authorized sanctions on anyone who refuses to comply with those pertinent sections of the Vehicle Code. Section 9019(g)(2) of the Liquid Fuels and Fuels Tax Act, 75 Pa.C.S. § 9019(g)(2), provides that it is a summary violation to refuse to permit an inspection

the existence of probable cause and the presence of exigent circumstances. One without the other is insufficient to justify the warrantless search of a vehicle."

**6.** *See Camara v. Municipal Court of the City and County of San Francisco*, 387 U.S. 523, 87 S.Ct. 1727, 18 L.Ed.2d 930 (1967) (preventing the prosecution of a lessee who refused to submit to a warrantless search).

**1.** Neil Hochreiter (Hochreiter), an enforcement officer for the Department, described his duty to limit fuel tax evasion and explained that the only diesel fuel approved for use on the roads of the Commonwealth is a clear fuel which is taxed and that dyed fuel is

only permitted for home heating, farming vehicles and off-road use. Hochreiter testified that Waltz purchased untaxed fuel from local suppliers, that his truck bore a tax decal which indicated it was required to use taxed fuel and that he observed Waltz' truck on the road. Hochreiter testified that he charged Waltz with refusal to allow an inspection.

**2.** The majority further fails to recognize that exceptions for warrantless vehicle searches exist when there is probable cause to believe the vehicle contains evidence of criminal activity and the vehicle could be removed prior to being searched or impounded. *Commonwealth v. White*, 543 Pa. 45, 669 A.2d 896 (1995).

to determine whether untaxed diesel fuel is being used on Pennsylvania roads.

Finally, I believe the record discloses that no constitutional objection was raised or preserved by Waltz at the trial level. The issue is waived. Pa.R.A.P. 302(a); *Commonwealth v. Bell,* 512 Pa. 334, 516 A.2d 1172 (1986); *See Dilliplaine v. Lehigh Valley Trust Company,* 457 Pa. 255, 322 A.2d 114 (1974). Waltz, in fact, presented no evidence.

Accordingly, I would affirm the trial court.

President Judge DOYLE joins in this dissent.