**WARRINGTON TOWNSHIP, Bucks County, Pennsylvania,**

v.

**Malcolm J. POWELL and Margaret H. Powell, Individually and d/b/a Malcolm's Auto Body/Auto Repair and Malcolm's Used Cars–Sales and Service, Appellants.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Feb. 15, 2002.

Decided April 26, 2002.

---

Malcolm Jeffrey Powell, Warrington, for appellants.

David J. Sander, Warrington, for appellee.

BEFORE: COLINS, President Judge, COHN, Judge, and MIRARCHI, JR., Senior Judge.

OPINION BY Senior Judge
MIRARCHI, Jr.

Malcolm J. Powell and Margaret H. Powell, individually and d/b/a Malcolm's Auto Body/Auto Repair and Malcolm's Used Cars—Sales and Service (Appellants), acting *pro se*, appeal from the order of the Court of Common Pleas of Bucks County (trial court) that granted an injunction requested by Warrington Township (the Township) to conduct annual warrantless fire safety inspections of all buildings, structures, and areas located on Appellants' business premises. We reverse in part and affirm in part.

On November 17, 1992, the Township's Board of Supervisors enacted Ordinance No. 92–15 that adopted, by reference, the Building Officials and Code Administrators National Fire Prevention Code (BOCA Code) (8th ed.1990), as the Township's Fire Prevention Code. Section F–107.1 of the BOCA Code provides for an annual inspection by the Township of all structures and premises, except for single-fami-

ly dwellings, two-family dwelling units, and multiple-family dwelling units. The annual inspection is intended to ascertain and cause to be corrected any conditions liable to cause fire, contribute to the spread of fire, interfere with fire-fighting operations, endanger life, or any violations of the letter and spirit of the BOCA Code or any other ordinance pertaining to fire safety.

On March 18, 1998, the Township attempted to perform an annual fire inspection pursuant to this provision at Appellants' premises, a gasoline station and automobile repair business located on Easton Road in Warrington, Pennsylvania.[1] Appellant Malcolm Powell, the principal owner of the business[2], denied the Township access to make the inspection.[3] As a result of Mr. Powell's refusal, the Township filed a summary criminal complaint with a district justice, alleging that Appellants had violated the Township's Ordinance by their refusal. On September 15, 1998, the district justice ordered Appellants to either submit to the Township fire inspection by September 26, 1998, or pay a fine of $500 per day, up to the allowable maximum limit. When Township officials thereafter attempted to inspect Appellants' property, Mr. Powell again refused their access.

In response to this last refusal, the Township obtained an administrative

---

1. Apparently, the Township had not previously attempted to inspect Appellants' premises. Testimony at the trial court hearing suggested that such inspections were not previously attempted because the Township lacked the personnel to perform them.

2. Margaret H. Powell is apparently Mr. Powell's mother. In their brief, Appellants deny that Margaret Powell is an owner, proprietor, or partner in the business. The business is not incorporated, and it is referred to in Appellants' brief as a sole proprietorship.

3. The record contains a copy of a letter the Township's Fire Marshal sent, purportedly, to all Township business owners indicating that the Township would be conducting an inspection in the near future, and that each business would be charged $50 as a fee for the service. Testimony taken at the trial court indicates that Mr. Powell demanded that the Township provide constitutional authority establishing the Township's right to enter onto his personal property. Mr. Powell signed Appellants' brief with the description that he is a "de jure, sovereign, Christian Citizen ... sui juris."

search warrant from the district justice that provided for an administrative search of Appellants' premises on September 25, 1998 between the hours of 9:00 a.m. and 4:00 p.m. When the Township officials attempted to execute the warrant, Mr. Powell again refused their access.

On September 21, 1998, Appellants filed an appeal to the trial court from the district justice's September 15, 1998 order. On October 9, 1998, the Township filed a complaint in equity against Appellants seeking an injunction directing and ordering Appellants to permit access of their business premises by Township officials seeking to perform the annual fire safety inspection pursuant to the BOCA Code. Appellants filed a timely response. The Township thereafter served on Appellants a Request for Entry upon Property pursuant to Pa. R.C.P. Nos. 4009.31 and 4009.32.[4] Appellants filed a timely objection to this request, and the Township responded by filing a motion to compel entry upon the property. Following a hearing, the trial court denied the Township's request, determining that the Township was simply attempting, through the discovery rules, to achieve the relief requested in their equity action without having first proven its entitlement to such relief.

On April 30, 2001, the trial court held a hearing on the Township's equity action, at which the Township presented the testimony of the Township's deputy fire marshal and code enforcement officer who had attempted to enter Appellants' premises in 1998, and Mr. Powell testified for Appellants, again acting *pro se*. Following the submission of legal memoranda from the parties, the trial court issued an order granting the Township's request for an injunction directing that the Township may enter upon Appellants' premises for purposes of an annual fire inspection. Appellants appealed to the Superior Court, which transferred the matter to this Court.

In addition to the above facts of record, the Township asserts the following events occurring after the filing of the appeal. The Township asserts that it again attempted to inspect Appellants' property based on the authority of the trial court's order. Appellants again refused. The Township filed a petition for contempt with the trial court, and Appellants requested a supersedeas or stay pending the appeal. The trial court denied Appellants' request, but allowed them the opportunity to file a motion with this Court requesting a supersedeas or stay. By order dated December 20, 2001, we denied Appellants' request for an emergency supersedeas or stay of the trial court's order. Thereafter, the trial court issued an order permitting the Township to enter Appellants' premises to conduct the fire safety inspection. The Township alleges that the inspection took place on January 7, 2002. The Township alleges in its brief, however, "that without a final determination on the merits of this case" by our Court, Appellants "will not permit the Township to perform any additional fire safety inspections of the premises." The Township's Brief, p. 7. Although

---

4. Pa. R.C.P. No. 4009.31 provides that any party may serve a request on another party (or non-party pursuant to Pa. R.C.P. No. 4009.33) to permit entry on property in that party's possession or control for purposes of inspection, measurement, surveying, photographing, testing, or sampling. Pa. R.C.P. No. 4009.32 provides that the request may be served without leave of court on any party after service of process on that party (or upon the plaintiff after the commencement of the action), describing with reasonable particularity the property to be entered and the activities to be performed. The party served with the request shall permit the inspection unless objections are raised within thirty days of service of the request.

the Township concedes that it has already obtained the relief of inspecting Appellants' premises, it is requesting that we proceed with ruling on this appeal to establish its right to conduct presumably warrantless, annual fire safety inspections of Appellants' premises on an ongoing basis.

 In light of the fact that the Township had already obtained an administrative warrant to search Appellants' premises and of the Township's allegation that it actually did inspect the premises, we must first determine whether we should proceed with the appeal or dismiss on the grounds of mootness. The trial court's order states in pertinent part that "a preliminary injunction is issued upon [Appellants] to permit representatives of the ... Township Fire Marshal's Office to enter upon the premises at 994 Easton Road, Warrington, Pennsylvania, for the purposes of conducting an annual fire safety inspection of all buildings, structures and areas located on the premises." The order implies that the representatives of the Township Fire Marshal's Office may enter Appellants' premises without a warrant, and that implication is fully supported by the trial court's supporting opinion that holds that warrantless administrative inspections do not violate any right Appellants may have under the Fourth Amendment of the United States Constitution or under the Pennsylvania Constitution. Because the trial court has authorized warrantless fire safety inspections of Appellants' premises, it is clear that the impact of the order extends beyond the Township's recent inspection of those premises. Indeed, the order may be read as enjoining Appellants from prohibiting ongoing "annual" inspections by representatives of the Township Fire Mar-

shal's Office, although the wording of the order is not perfectly clear as to this point.[5] The trial court was well aware that the Township was seeking the authority to conduct ongoing annual inspections. *See* Notes of Testimony, pp. 4, 6–7. Therefore, we conclude that the ultimate issue of this case has not been rendered moot by the fact that the Township had obtained a warrant and, *more importantly, conducted a fire safety inspection of the premises.* Further, even if the issue is technically moot, the issue of access to Appellants' premises is one likely to be repeated, yet evade appellate review, and the question, involving the Township's inspection of commercial properties on an annual basis as well as competing privacy rights, is one concerning important public interests. *See Sierra Club v. Pennsylvania Public Utility Commission,* 702 A.2d 1131 (Pa.Cmwlth.1997), *aff'd,* 557 Pa. 11, 731 A.2d 133 (1999). We shall therefore proceed with Appellants' appeal.

 This Court's scope of review of an order granting a preliminary injunction is limited to determining whether the trial court had any reasonable grounds to support its action. We will interfere with the court's decision only if it had no grounds to support the injunction or that the rule of law relied upon by the court was palpably erroneous or misapplied. Where, however, the injunctive relief is affirmative, we may engage in a closer scrutiny to insist that the plaintiff established a clear right to relief. *Borough of Emporium v. Keystone Airport Authority,* 134 Pa.Cmwlth. 20, 578 A.2d 56 (1990). Appellants argue that the trial court's order must be reversed because (1) it allegedly fails to address the issues raised in the Township's complaint; (2) it allegedly "ignores" the

---

5. Although the trial court ordered "an" annual fire safety inspection, the circumstances indicate that this injunction is to be ongoing, and not for one occasion only.

previous order of the trial court dated May 22, 2000; (3) it allegedly bases its authority on Pa. R.C.P. Nos. 4009.31 and 4009.32(a); and (4) it is contrary to the United States Constitution.

The first three arguments of Appellants are meritless and may be disposed of quickly. They all relate to the fact that the trial court stated in its order that the order was issued following consideration of the Township's request for entry upon Appellants' premises pursuant to Pa. R.C.P. Nos. 4009.31 and 4009.32(a) and Appellants' response thereto. The trial court explained in its supporting opinion, however, that this was merely a typographical error; that the relief ordered by the court was based on the issues raised by the equity action, the hearing thereon, and following the submission of memoranda of law of the parties; and that the substance of the order was not in question, *i.e.*, that the Township had the authority to conduct annual fire safety inspections of Appellants' premises. Although the matter may have been clarified with greater definitiveness had the trial court simply issued an amended order, the trial court's opinion is unquestionably clear that the relief granted to the Township was based on the issues raised in the Township's equity complaint and upon the court's determination that the Township was authorized by its Ordinance to conduct such inspections and that such inspections were not violative of Appellants' constitutional rights. Because we reverse on other grounds, there is no need to discuss these issues further.

■ The remaining issue is whether the trial court's order of warrantless administrative searches of Appellants' commercial premises is valid under the United States Constitution.[6] The trial court found authority to order warrantless inspections of commercial premises in *Donovan v. Dewey*, 452 U.S. 594, 101 S.Ct. 2534, 69 L.Ed.2d 262 (1981), and *Township of Lower Milford v. Britt*, 695 A.2d 958 (Pa. Cmwlth.1997). The trial court quoted *Donovan* as stating that there was "greater latitude to conduct warrantless inspections of commercial property" than of private property because "the expectation of privacy that the owner of commercial property enjoys in such property differs significantly from the sanctity accorded an individual's home, and ... this privacy interest may, in certain circumstances, be adequately protected by regulatory schemes authorizing warrantless inspections...." *Id.* at 598–99, 101 S.Ct. 2534. In *Lower Milford*, we held that a township may, under its zoning ordinance and without a warrant, inspect a trash-hauling facility without being violative of the Fourth Amendment rights of the facility's owner.

The trial court, however, drew too sweeping a conclusion from its cited authority. *Donovan* did not hold that government agencies may make warrantless administrative searches of all commercial property for any legitimate and important reason because there is a reduced expectation of privacy on such property. Rather, *Donovan* followed a line of Supreme Court cases holding that a warrant may not be constitutionally required for an administrative search for commercial enterprises that are highly regulated and where the regulatory scheme is so comprehensive and particular that it in effect secures the protections of the warrant process and serves notice on the regulated business that it will

---

6. Appellants do not raise any issue under the Pennsylvania Constitution, and we will therefore not consider any such issue. *See In the Interest of F.B.*, 442 Pa.Super. 216, 658 A.2d 1378 (1995), *aff'd*, 555 Pa. 661, 726 A.2d 361, *cert. denied, F.B. v. Pennsylvania*, 528 U.S. 1060, 120 S.Ct. 613, 145 L.Ed.2d 508 (1999).

be subject to periodic inspections. *Id.* at 600, 101 S.Ct. 2534. *Lower Milford* essentially followed the holding in *Donovan.*

More importantly, the United States Supreme Court has specifically held that a businessman has a constitutional right to insist that a local fire inspector, in conducting a routine periodic fire inspection, obtain a warrant authorizing entry upon his locked warehouse, that is, upon commercial premises not open to the public. *See v. Seattle*, 387 U.S. 541, 87 S.Ct. 1737, 18 L.Ed.2d 943 (1967). Although the Supreme Court may have, since *See,* modified the grounds upon which permissible warrantless administrative inspections may be made [7], *See* has never been explicitly or even implicitly reversed. It must therefore control the outcome of this case.

■ The Fourth Amendment of the U.S. Constitution, insures the right "of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches," and provides that warrants may not be issued except "upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched." Its purpose is to "safeguard the privacy and security of individuals against arbitrary invasions by governmental officials"; and the Supreme Court has observed as its governing principle under this clause, that, "except in certain carefully defined classes of cases, a search of private property without proper consent is 'unreasonable' unless it has been authorized by a valid search warrant." *Camara v. Municipal Court of San Francisco*, 387 U.S. 523, 528–29, 87 S.Ct. 1727, 18 L.Ed.2d 930 (1967).

In *Camara,* the Court recognized that Fourth Amendment privacy concerns apply to administrative inspections as well as criminal searches. In that case, the Court ruled that an apartment resident could not be convicted for refusing entry to a building code inspector without a warrant. In *See,* the Court determined that the Fourth Amendment privacy concerns regarding administrative inspections also applied to commercial premises. The Court stated:

The businessman, like the occupant of a residence, has a constitutional right to go about his business free from unreasonable official entries upon his private commercial property. The businessman, too, has that right placed in jeopardy if the decision to enter and inspect for violation of regulatory laws can be made and enforced by the inspector in the field without official authority evidenced by warrant.... We [therefore] hold ... that the basic component of a reasonable search under the Fourth Amendment—that it not be enforced without a suitable warrant procedure—is applicable in this context, as in others, to business as well as to residential premises. Therefore [the business owner] may not be prosecuted for exercising his constitutional right to insist that the fire inspector obtain a warrant authorizing entry upon [the business owner's] locked warehouse.

*See,* 387 U.S. at 543–46, 87 S.Ct. 1737. Again, the issue in *See* concerned, as here, whether a fire inspector may come upon a business owner's commercial property, pursuant to a local ordinance authorizing routine safety inspections, without a warrant if entry is refused.

Although the Supreme Court has recognized that the expectation of privacy on commercial premises is certainly different from, and to a lesser degree than, the privacy expectation in the home, it has not abrogated its "long recognition" that the

---

7. *See, e.g.,* Lynn S. Searle, *The "Administrative" Search from Dewey to Burger: Dismantling the Fourth Amendment,* 16 Hastings Const. L.Q. 261 (1989).

Fourth Amendment's prohibition of unreasonable searches and seizures applies to commercial as well as private premises. *See New York v. Burger*, 482 U.S. 691, 699–700, 107 S.Ct. 2636, 96 L.Ed.2d 601 (1987). The Court has, however, pursued an exception to the administrative warrant requirement for commercial premises connected with "closely regulated" industries. *Id.* Because the Court determined that these industries had a long history of close governmental supervision, the privacy expectation was considerably weakened, and the governmental interest in regulating these industries was considerably heightened. *Id.* Thus, in a series of cases, the Court determined that warrantless inspections of commercial premises involved in closely regulated businesses may well be reasonable within the meaning of the Fourth Amendment. *Id.; Donovan; United States v. Biswell*, 406 U.S. 311, 92 S.Ct. 1593, 32 L.Ed.2d 87 (1972); *Colonnade Catering Corp. v. United States*, 397 U.S. 72, 90 S.Ct. 774, 25 L.Ed.2d 60 (1970). *See also Commonwealth v. Waltz*, 749 A.2d 1058 (Pa.Cmwlth.), *petition for allowance of appeal denied*, 564 Pa. 716, 764 A.2d 1072 (2000).

The Court determined, however, that even when closely regulated businesses are involved, warrantless inspections will be deemed reasonable only so long as three criteria are met: (1) there must be a substantial governmental interest supporting the regulatory scheme pursuant to which the inspection is made; (2) the warrantless search must be necessary to further the regulatory scheme; and (3) the statute's inspection program must, through the definitiveness of the statutory language, provide a constitutionally adequate substitute for a warrant by (a) advising the owner of the commercial premises that the search is made pursuant to law with a properly defined scope and (b) limiting the discretion of the inspecting officers. *Burger.* With

regard to the third element, the Court has held that the statute must be "sufficiently comprehensive and defined that the owner of commercial property cannot help but be aware that his [or her] property will be subject to periodic inspections undertaken for specific purposes." *Donovan*, 452 U.S. at 600, 101 S.Ct. 2534. Additionally, the statute must limit the discretion of the inspectors by detailing the time, place, and scope of the inspections. *Burger.*

Under these principles, the Supreme Court determined that comprehensive and detailed statutory inspection schemes rendered unnecessary the "assurance of regularity provided by a warrant" (*Donovan*, 452 U.S. at 599, 101 S.Ct. 2534) in several instances: federal liquor laws (*Colonnade*), the Gun Control Act of 1968 (*Biswell*), the Federal Mine Safety and Health Act of 1977 (*Donovan*), and New York laws pertaining to automobile dismantlers and junk yard dealers (*Burger*). By contrast, the Supreme Court determined that the administrative inspection provisions under Section 8(a) of the Occupational Safety and Health Act of 1970 (OSHA), 29 U.S.C. § 657(a), are not so comprehensively defined as to permit warrantless inspections under that act. *Marshall v. Barlow's, Inc.*, 436 U.S. 307, 98 S.Ct. 1816, 56 L.Ed.2d 305 (1978). The Court noted that OSHA failed to tailor the scope and frequency of the administrative inspections to specific health and safety concerns. Rather, the act generally authorized inspections of any workplace, allowing the inspectors to investigate any condition and question any employer, owner, operator, agent, or employee. Further, the act did not provide standards regarding the time, place, and manner of the inspections, but simply authorized searches at "reasonable times, and within reasonable limits and in a reasonable manner." 29 U.S.C § 657(a).

■ In light of this authority, it is apparent that the trial court erred by concluding that warrantless searches are authorized or constitutionally permissible under the BOCA Code with respect to Appellants' premises. First, although the Township's desire to conduct annual fire safety inspections is clearly in the public interest, no evidence or authority was presented below to show that Appellants' business is a closely or heavily regulated one.[8] Second, even if Appellants' business, as an automobile repair shop, may be considered a highly regulated one, the administrative inspection at issue here is not connected with such regulation. That is, the Supreme Court has not determined that once a business is highly regulated, it is subject to warrantless administrative inspections from any governmental agency, but obviously only from the agency charged with overseeing such close regulation. Third, the BOCA Code does not by its language authorize warrantless searches or by any means provide for a constitutionally adequate substitute for a warrant.

Section 107.3 of the BOCA Code provides:

Whenever necessary for the purpose of enforcing the provisions of this code ... the code official shall be permitted to enter such structure or premises at all reasonable times to inspect the same or to perform any duty imposed by the code official by this code; provided that if such a structure or premises is occupied, the code official shall first present proper credentials and request entry. If such entry is refused, the code official shall have recourse to every remedy provided by law to secure entry.

Thus, the BOCA Code does not explicitly provide for warrantless searches. In fact, it indicates that code officials, once refused entry, may seek to obtain an administrative warrant to "secure entry." Further, this section's lack of definitiveness mirrors the language of Section 8(a) of OSHA that the Supreme Court determined, in *Marshall*, was not sufficiently comprehensive to protect the privacy interest of a commercial property owner.

Accordingly, the trial court erred by concluding that *Donovan* supported the Township's warrantless search of Appellants' business premises.[9] Of course, there

---

8. *See Pinney v. Phillips*, 230 Cal.App.3d 1570, 281 Cal.Rptr. 904 (1991) (an electrical contractor's business is not a pervasively regulated one for purposes of the closely regulated business exception to the warrant requirement). As the Supreme Court noted, the exceptions of the warrant requirement for heavily regulated businesses are just that: exceptions. *Marshall*, 436 U.S. at 313, 98 S.Ct. 1816.

9. We note that no Pennsylvania case supports the trial court's holding either. In *Department of Environmental Resources v. Blosenski Disposal Service*, 523 Pa. 274, 566 A.2d 845 (1989), our Supreme Court held that the warrantless, unannounced inspection provisions of Section 608 of the Solid Waste Management Act, Act of July 7, 1980, P.L. 380, *as amended*, 35 P.S. § 6018.608, are valid under

the exception to the warrant requirement of the Fourth Amendment for heavily regulated businesses. In *Lower Milford*, we found authority in *Blosenski* for township officials to conduct warrantless administrative inspections of a trash hauler's premises pursuant to the zoning ordinance and the conditions imposed by the township when it permitted the business owner to engage in trash hauling activities. In *Commonwealth v. Feineigle*, 690 A.2d 748 (Pa.Cmwlth.1997), we held that a fire marshal's photographs of the interior of the business owner's auto repair garage was not an unreasonable search under the Fourth Amendment because the fire marshal was lawfully authorized to stand outside of the garage entrance during a safety inspection, and because the business owner did not have a reasonable expectation of privacy in that portion of the property open to the public.

is no impediment to the Township's inspection of any portion of Appellants' premises that are open to the public. *See See; Feineigle.* Thus, to the extent that the trial court's order authorizes entry upon the public portions of Appellants' premises, it must be affirmed. To the extent, however, that the order authorizes a warrantless entry on that portion of Appellants' premises that are closed to the public, once entry has been refused, the trial court's order must be reversed pursuant to *See.*

██ It must be noted, however, that it is generally not difficult to obtain a warrant to perform routine and periodic administrative inspections. If a valid public interest, such as the routine periodic fire safety inspections authorized by the BOCA Code, justifies the intrusion contemplated by the agency, then probable cause exists to issue a suitably restricted search warrant. *Camara.* Indeed, the passage of time since the last administrative inspection may be all that is necessary to justify the issuance of a warrant. *Id.* Thus, Appellants must be mindful that the issue herein is not whether they are constitutionally insulated from opening their commercial premises to periodic fire safety inspections. They are not. Rather, the issue is whether those inspections will occur pursuant to warrant, issued by a neutral third person upon a showing of probable cause, or without the need for a warrant.

Accordingly, the trial court's order is affirmed in part and reversed in part. The order is affirmed insofar as it authorizes warrantless administrative periodic fire safety inspections for those portions of Appellants' premises that are open to the public. The order is reversed insofar as it authorizes warrantless administrative periodic fire safety inspections, when entry has been refused, for those portions of Appellants' premises that are not open to the public.

## ORDER

AND NOW, this 26th day of April, 2002, the order of the Court of Common Pleas of Bucks County in the above-captioned matter is hereby affirmed in part and reversed in part. The order is affirmed insofar as it authorizes warrantless administrative periodic fire safety inspections for those portions of Appellants' premises that are open to the public. The order is reversed insofar as it authorizes warrantless administrative periodic fire safety inspections, when entry has been refused, for those portions of Appellants' premises that are not open to the public.